U.S. DISTRICT COURT
_EASTERN_ DISTRICT OF LOUISIANA
PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

# 15-6298

Name: ___William Lauga_____     Prisoner No. __568149__

## SECT. G MAG. 1

Place of Confinement:____Louisiana State Penitentiary_____

United States District Court _____ District of ___Louisiana_____

Case No._____ (to be supplied by Clerk of the U.S. District Court)

____William David Lauga_____ PETITIONER
*[Your Full Name]*

v.

____N. Burl Cain, Warden, LSP__ RESPONDENT
(Name of Warden, Superintendent, Jailer, or authorized person having custody of petitioner.)

THE ATTORNEY GENERAL OF THE STATE OF: ____Louisiana,_____
_____James Caldwell_____ ADDITIONAL RESPONDENT

(If petitioner is attacking a judgement which imposed a sentence to be served in the *future*, petitioner must fill in the name of the state where the judgment was entered. If petitioner has a sentence to be served in the *future* under a federal judgment which he wishes to attack, petitioner should file a motion under 28 U.S.C. Sec. 2255, in the federal court which entered the judgment.)

### Instructions -- Read Carefully

(1) This petition must be legibly handwritten or typewritten, and signed by petitioner under penalty of perjury. Any false statement of material fact may serve as a basis for prosecution and conviction for perjury. All questions must be answered concisely in the proper space on the form.

(2) Additional pages are not permitted except with respect to the *facts* which you rely upon to support your grounds for relief. No citation of authorities need be furnished. If briefs or arguments are submitted, they should be submitted int he form of a separate memorandum.

(3) Pursuant to 28 U.S.C. Sec 2244(d)(1) and (2), this petition must be filed within 1 year of the latest of: (1) the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review; (2) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (3) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.

(4) Pursuant to 28 U.S.C. 2244(b), a second or successive habeas corpus application must be authorized as provided in 28 U.S.C. Sec. 2244 by a panel of the United States Court of Appeals for the Fifth Circuit before a second or successive motion may be filed in the district court. Submit a copy of the appropriate authorization with these forms if this is a second or successive application.

(5) Upon receipt of a fee of $5 your petition will be filed in the proper order.

(6) If you do not have the necessary filing fee, you may request permission to proceed in forma pauperis, in which event you may execute the declaration on the last page, setting forth information establishing your inability to prepay the fees and costs or give security thereof. If you wish to proceed in forma pauperis, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution.

(7) Only judgments entered by one court may be challenged in a single petition. If you seek to challenge judgments entered by different courts either in the same state or in different states, you must file separate petitions as to each court.

(8) Your attention is directed to the fact that you must include all grounds for relief and all facts supporting such grounds for relief in the petition you file seeking relief from any judgment of conviction.

(9) When the petition is fully completed, the original and two copies must be mailed to the Clerk of the United States District Court whose address is __500 Poydras Street, New Orleans Louisiana, 70130__

(10) Petitions which do not conform to these instructions will be returned with a notation of the deficiency.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
_____ DIVISION

PETITION

1.  Name and location of court which entered the judgment of conviction under attack __22nd JDC, Div, "G"__

    __Parish of St. Tammany__

2.  Date of judgment of conviction __April 28, 2010__

3.  Length of sentence____ __Sixty-five years__

4.  Nature of offense involved (all counts) **Armed Robbery**

5.  What was your plea? (Check one)

    (a)    Not guilty           ☒

    (b)    Guilty               ☐

    (c)    Nolo Contendere      ☐

    If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment,

give details:_____

6.  Kind of trial: (Check one)

    (a)    Jury             ☒

    (b)    Judge only   ☐

7.  Did you testify at the trial?   Yes ☒ No☐

8.  Did you appeal from the judgment of conviction?

         Yes ☒ No☐

9.    If you did appeal, answer the following:

    (a) Name of court **Louisiana Supreme Court**

    (b) Result **Denied Relief**

    (c) Date of result **August 30, 2013**


10.    Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?

        Yes ☒ No☐


11.    If your answer to 10 was "yes", give the following information:

    (a) (1) Name of court **22nd Judicial District Court, Parish of St. Tammany, Louisiana**

       (2) Nature of proceeding **Application for Post Conviction Relief**

       (3) Grounds raised **Ineffective Assistance of Counsel; Improper Admission of Evidence of Other Crimes; Improper Admission of Evidence to the Jury, misleading statements**

       (4) Did you receive an evidentiary hearing on your petition, application or motion?   Yes☐   No ☒

       (5) Result

       (6) Date of result

    (b) As to any second petition, application or motion give the same information:

       (1) Name of court **N/A**

       (2) Nature of proceeding

(3) Grounds raised_____

_____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?   Yes☐      No☐

(5) Result_____

(6) Date of result_____

(c) As to any third petition, application or motion, give the same information:

(1) Name of court_____N/A_____

(2) Nature of proceeding_____

_____

(3) Grounds raised_____

_____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?   Yes☐      No☐

(5) Result_____

(6) Date of result_____

(d) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

(1) First petition, etc.        Yes ☒ No ☐

(2) Second petition, etc.      Yes ☐ No ☐

(3) Third petition, etc.       Yes ☐ No ☐

5

(e) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not: _____

_____

_____

_____

12.   State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the facts supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a)   Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b)   Conviction obtained by use of coerced confession.

(c)     Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d)     Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e)     Conviction obtained by a violation of the privilege against self-incrimination.

(f)     Conviction obtained by the unconstitutional failure of the prosecution
        to disclose to the defendant evidence favorable to the defendant.

(g)     Conviction obtained by a violation of the protection against double
        jeopardy.

(h)     Conviction obtained by action of grand or petit jury which was unconstitutionally selected and impaneled.

(i)     Denial of effective assistance of counsel.

(j)     Denial of right of appeal.

A.      Ground One:  **Improper Admission of Other Crimes in Evidence**

Supporting FACTS (tell your story *briefly* without citing cases or law)

   The Court Allowed the State to Improperly Admit Evidence of Other Crimes that Mr. Lauga
   Was Never Convicted. This Crime Was Never Taken to Trial and Mr. Lauga had Only been
   a Suspect. Prior to the State's coaxing of the Witness, Mr. Lauga had never been connected to
   this Other Robbery. The State argued these crimes were similar, yet the evidence did not support that.

B.    Ground Two: Denial of Sixth Amendment Right to the Effective Assistance of Counsel

Supporting FACTS (tell your story *briefly* without citing cases or law)

 Counsel failed to Investigate that the alleged weapon was old prior to the alleged crime

 Therefore Lauga could not have had the gun at the time as alleged by the State.; Counsel failed

 to Investigate alleged Evidence of Other Crimes submitted to the Jury, which did not happen

 and could have been proven by accessing public records readily available.

C.    Ground Three:    Prosecutorial Misconduct

Supporting FACTS (tell your story *briefly* without citing cases or law)

 The State introduced Other Crimes in Evidence without notifying the defense and without notifing

 the Court. Thus denying the Defense an opportunity to refute the allegations. At the time the State

 introduced this evidence the prosector knew, or should have known, it to be false.

D.    Ground Four:    Introduction of False Evidence by the State

Supporting FACTS (tell your story *briefly* without citing cases or law)

 The State led the Jury to Believe That Mr. Lauga had been convicted on a prior Armed Robbery.

 This Evidence, Presented Before the Jury, Was FALSE and was known to be false prior to its

 Introduction to the Jury. Thus Denying Mr. Lauga of any resemblance of a Fair Trial.

13. If any of the grounds listed in 12A,B,C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them:

_____N/A_____

_____

_____

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?        Yes ☐  No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing   **Peter Ierardi, IV, 1340 Poydras St., New Orleans LA**

_____

(b) At arraignment and plea   **Same**

_____

(c) At trial   **Same**

_____

(d) At sentencing   **Same (At 1st Senetencing) // Melissa Brink-Valdivia (2nd Sentencing)**

_____

(e) On appeal   **Lieu T. Vo, Clark, P.O. Box 465, Mandeville LA**

_____

(f) In any post-conviction proceeding   **Pro-se / Trial Court failed to rule on motion to appoint**

_____

(g) On appeal from any adverse ruling in a post-conviction proceeding   **Pro Se**

_____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?        Yes ☐  No ☒

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?    Yes ☐ No ☒

   (a)   If so, give name and location of court which imposed sentence to be served in the future:

_____

_____

   (b)   Give date and length of the above sentence:_____

_____

   (c)   Have you filed, or do you contemplate filing any petition attacking the judgment which imposed the sentence to be served in the future?    Yes ☐ No ☐

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____

Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct.

Executed (signed) this 23rd day of _November_, 2015.

_____

Signature of Petitioner

10

FEDERAL QUESTIONS PRESENTED:

In particular, Petitioner represents that:

1. WAS MR. LAUGA DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION?

1. A) DID COUNSEL FAIL TO CONDUCT A PROPER INVESTIGATION TO LEARN FACTS NECESSARY TO PRESENT A FULL AND PROPER DEFENSE AND PRESENT EVIDENCE FAVORABLE TO MR. LAUGA CONTRARY TO CONSTITUTIONAL PROTECTIONS SET FORTH BY LOUISIANA AND THE UNITED STATES?

1. B) DUE TO THE INEFFECTIVE ASSISTANCE OF COUNSEL WAS MR. LAUGA DENIED HIS RIGHT OF DUE PROCESS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES WHERE HE WAS DENIED A FAIR AND IMPARTIAL TRIAL AND DENIED THE ADVESARIAL PROCESS DUE TO THE FRADULENT ADMISSION OF HEARSAY TESTIMONY?

1. C) DUE TO THE INEFFECTIVE ASSISTANCE OF TRIAL WAS MR. LAUGA DENIED HIS RIGHT OF DUE PROCESS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION WHERE HE WAS DENIED A FAIR AND IMPARTIAL JURY?

2. DID THE ACTIONS AND/OR INACTIONS OF THE STATE AMOUNT TO INTENTIONAL AND FLAGRANT PROSECUTORIAL MISCONDUCT, VIOLATIVE OF PETITIONER'S FOURTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS OF THE UNITED STATES CONSTITUTION?

3. DID THE IMPROPER ADMISSION OF OTHER CRIMES EVIDENCE PREJUDICE MR. LAUGA AND DENY HIM OF HIS CONSTITUTIONAL RIGHT TO THE DUE PROCESS OF LAW AND A FAIR TRIAL GUARANTEED BY THE UNITED STATES CONSTITUTION SIXTH AND FOURTEENTH AMENDMENTS, FEDERAL RULE 404, AND THE LOUISIANA CONSTITUTION ARTICLE 1§ 16?

4. DID THE TRIAL COURT ERR IN DENYING MR. LAUGA'S MOTION FOR MISTRIAL AFTER THE STATE QUESTIONED MR. LAUGA AS TO A JUVENILE ADJUDICATION?

5. DID THE COURT ERR IN DENYING MR. LAUGA AN EVIDENTIARY HEARING TO SUBSTANTIATE HIS CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL ON INITIAL COLLATERAL REVIEW?

6. WAS THE SENTENCE CONSTITUTIONALLY EXCESSIVE?

2.

## TABLE OF CONTENTS:

TABLE OF AUTHORITIES..................................................................................................iii

MEMORANDUM IN SUPPORT.............................................................................................5

GROUNDS FOR RELIEF......................................................................................................5

FEDERAL QUESTIONS PRESENTED....................................................................................6

WRIT GRANT STATEMENT.................................................................................................7

STATEMENT OF THE CASE................................................................................................7

      **Timeliness of Application**........................................................................................8

STATEMENT OF FACTS......................................................................................................9

CLAIM NO. 1...................................................................................................................10

      **Was Mr. Lauga denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution?**....................................10

LEGAL STANDARDS.........................................................................................................10

ANALYSIS.......................................................................................................................11

PREJUDICE......................................................................................................................13

THE ORIGIN OF THE RIGHT TO COUNSEL.........................................................................14

CLAIM 1 A......................................................................................................................16

      **Did counsel fail to conduct a proper investigation to learn facts necessary to present a full and proper defense and present evidence favorable to Mr. Lauga contrary to constitutional protections set forth by Louisiana and the United States?**.................16

LAW AND ARGUMENT.....................................................................................................16

CLAIM 1 B......................................................................................................................23

      **Due to the ineffective assistance of counsel was Mr. Lauga denied his right of Due Process under the Sixth and Fourteenth Amendments to the Constitution of the United States where he was denied a fair and impartial trial and denied the adversarial process due to the fraudulent admission of hearsay testimony?**............23

LAW AND ARGUMENT.....................................................................................................23

CLAIM 1 C......................................................................................................................25

      **Due to the ineffective assistance of trial was Mr. Lauga denied his right of Due Process under the Sixth and Fourteenth Amendments of the United States Constitution where he was denied a fair and impartial jury?**....................................25

LAW AND ARGUMENT.....................................................................................................25

i

CUMULATION OF INEFFECTIVE ASSISTANCE OF COUNSEL..................................27

CLAIM NUMBER 2...................................................................................................29

Did the actions and/or inactions of the State amount to intentional and flagrant prosecutorial misconduct, violative of Petitioner's Fifth, Sixth, and Fourteenth Amendment rights of the United States Constitution?.................................29

LAW AND ARGUMENT..........................................................................................29

Prosecutorial Misconduct...............................................................................29

CLAIM NUMBER 3...................................................................................................35

Did the improper admission of other crimes evidence prejudice Mr. Lauga and deny him of his constitutional right to the Due Process of Law and a fair trial guaranteed by the United States Constitution Sixth and Fourteenth Amendments, Federal Rule 404, and the Louisiana Constitution Article 1§ 16?...............................................35

LAW AND ARGUMENT..........................................................................................35

CLAIM NUMBER 4...................................................................................................38

Did the trial court err in denying Mr. Lauga's Motion for Mistrial after the State questioned Mr. Lauga as to a juvenile adjudication ?.................................38

CLAIM NUMBER 5...................................................................................................40

Did the court err in denying Mr. Lauga an evidentiary hearing to substantiate his claims of ineffective assistance of counsel on initial collateral review?.................40

LAW AND ARGUMENT..........................................................................................40

CLAIM 6...................................................................................................................42

Was the sentence constitutionally excessive?.................................42

LAW AND ARGUMENT..........................................................................................42

CONCLUSION.........................................................................................................44

PRAYER...................................................................................................................44

CERTIFICATE AND VERIFICATION......................................................................45

**EXHIBIT "A"**

Extract of Minutes October 19, 2000, St. Bernard Parish. 34th Judicial District Court Docket No: 156-151/156. State of Louisiana v. William Lauga.

**EXHIBIT "B"**

Court Record Pgs. 432-33, 439, 441-42.

**EXHIBIT "C"**

Detective Canizaro's report showing false evidence obtained through St. Bernard Parish Sheriff's Office Detective Captain Mark Jackson.

**EXHIBIT "D"**

Court record pg. 479 of false evidence introduced by Prosecutor during closing arguments.

**EXHIBIT "E"**

Court record pgs. 450-51, showing Judge Crain's erroneous decision that there was no reference to the type of crime. ( See also Exhibit "B" pg. 432).

**EXHIBIT "F"**

Court record Pg. 297 where victim says gun introduced by state was in fact same gun used in commission of crime for which Mr. Lauga was convicted.

**EXHIBIT "G"**

Post-Conviction Relief Application denied by Judge Scott Gardner on July 16, 2014.

**EXHIBIT "H"**

Original Post-Conviction Application.

TABLE OF AUTHORITIES:

## U.S. CONSTITUTION:

5th, 6th, 8th, and 14th Amendment to the United States Constitution..................................29, 34
Eighth Amendment to the Constitution of the United States.........................................................44
Fifth and Fourteenth Amendments.................................................................................................37
Fourteenth Amendment to the United States Constitution..........................6, 7, 10, 14, 23, 25, 27
Fourteenth and Sixth Amendment of the United States Constitution............................................28
Fourth, Sixth, and Fourteenth Amendments to the United States Constitution...............................7
Sixth Amendment to the United States Constitution.........................10, 11, 12, 14, 18, 27, 28, 29

## FEDERAL CASES:

Baldwin v. Maggio, 704 F.2d 1325 (5th Cir. 1983)........................................................................21
Breakiron v. Horn, 642 F.3d 126, 133(3rd Cir. 2009)...................................................................39
Brogdon v. Louisiana, 105 S.Ct. 2345 85 L.Ed.2d 862.................................................................45
Bryant v. Scott, 28 F.3d 1411, 1417 (5th Cir. 1994)......................................................................19
Calloway v. Powell, 392 F.2d 886 (5th Cir.1968)..........................................................................14
Collins v. Scully, 755 F.2d 16, 19(2nd Cir. 1985).........................................................................35
Crisp v. Duckworth, 743 F.2d 580, 584(7th Cir. 1984).................................................................24
Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144(1986).....................32
DeLuca v. Lord, 77 F.3d 578(2nd Cir. 1996), cert. denied, 117 S.Ct. 83, 136 L.Ed.2d 40(1996)15
Derden v. McNeel, 938 F.2d 605(5th Cir. 1991)............................................................................29
Donnelly v. DeChristophoro, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431(1974).............32
Douglas v. California, 372 U.S. 353, 257-58, 83 S.Ct. 814, 9 L.Ed.2d 84(1963)..................13, 23
Doyle v. Ohio;426 U.S.610 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)................................................35
Fitzgerald v. Estelle, 505 F.2d 1334(5th Cir. 1974).......................................................................16
Gideon v. Wainwright, 372 U.S.335, 83 S.Ct. 792, 9 L.Ed.2d 799(1963)....................................12
Greer v. Miller, 483 U.S. 756,765, 107 S.Ct. 3102, 97 L.Ed.2d 618(1987)............................31, 36
Halbert v. Michigan, 545 U.S. 605, 125 S.Ct. 2582, 162 L.Ed 2d 552(2005)........................13, 23
House v. Balkcom, 723 F.2d 608(11th Cir. 1984)..........................................................................20
Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771(1988)............38, 39
Ibarra v. Thaler, No. 11-70031 (5th Cir. 6/28/12)..........................................................................43
Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)(footnote omitted)........27
Kutzner v. Johnson, 242 F.3d 605, 609(5th Cir. 2001).............................................................31, 36
Kyles v. Whitley, 115 S.Ct. 1555, 1567(1995)...............................................................................30
Lindsey v. Cain, 476 Fed. Appx. 777,(2012)..................................................................................23
Martin vs. Maggio, 711 F.2d 1273(5th Cir. 1983)..........................................................................25
Martinez v. Ryan, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012)...................13, 23, 42, 43
Maxwell v. Roe, 628 F.3d 486 (9ᵗʰ Cir. 2010)...............................................................................28
McMann v. Richardson, 397 U.S.759, 90 S.Ct. 1441, 25 L.Ed.2d 763(1970).............................12
Miller-El v. Cockrell, 537 U.S 322,327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)................23, 43
Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).......................26, 38, 41
Nealy v. Cabana, 764 F.2d 1173 (5th Cir. 1985)......................................................................14, 19
Nettles v. Wainwright, 677 F.2d 410, 414-15 (5th Cir. 1982).......................................................35
Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574(1937).....................40
Pennsylvania v. Ritchie, 480 U.S. 39, 59-60, L.Ed.2d 40(1987)..................................................35

Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed.2d 158(1932)................................17
Profitt v. Waldron, 831 F.2d 1245 (5th Cir.1987)..........................................................14, 19
Reynolds v. United States, 98 U.S. 145, 155, 25 L.Ed. 244..................................................27
Roberts v. Cockrell, 319 F. 3d 690(5th Cir. 2003).................................................................11
Sanders v. Ratelle, 21 F.3d 1446(9th Cir. 1994)..............................................................14, 24
Slack v. McDaniel, 529 U.S. 473, 483-484 (2000).................................................................42
State v. Scales, (La. 5/22/95) 655 So.2d 1326, Cert. denied, 116 S.Ct. 716..........................38
Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)..........16, 19, 43
Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182(1993)...39
Taylor v. Kentucky, 436 U.S. 478, 487 n.15, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978).................30
Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654..........................27
Trevino v. Thaler, 133 S.Ct.1911, 185 L.Ed.2d 1044 (2013)..............................................13
U.S. Ex Rel Cosey v.Wolff, 727 F.2d 656, 658(7th Cir.1984)..............................................24
U.S. v. Debango, 780 F.2d 81(D.C. Cir. 1986)....................................................................24
United States v. Agurs, 427 U.S. 97, 113 96 S.Ct. 2392, 49 L.Ed.2d. 342 (1976)................39
United States v. Bagley, 473 U.S. 667,676,105 S.Ct. 3375, 87 L.Ed.2d 481(1985)........31, 36
United States v. Cronic, 446 U.S. 648, 104S.Ct.2039, 80 L.Ed.2d 657 (1984)..................12
United States v. Gayansky, 291 F.3d 1245 1248-50 (10th Cir. 2002).....................................40
United States v. Lowden, 900 F.2d 213, 216-17 (10th Cir. 1990).........................................35
United States v. Young, 470 U.S. 1,6, 105 S.Ct. 1038,1041, 84 L.Ed.2d 1 (1985)................35
Vella v. Estelle, 708 F.2d 954(5th Cir. 1983)......................................................................24
Weems v. United States, 30 S.Ct. 544...................................................................................44
Wilson v. Beard, 589 F.3d 651, 665 (3rd Cir. 2009).............................................................39
Windom v. Cook, 423 F.2d 721 at 721 (5th Cir. 1970)........................................................14

## STATUTORY PROVISIONS:

28 U.S.C. § 2244.....................................................................................................................10
28 U.S.C. § 2254.....................................................................................................................6, 8, 10
28 U.S.C. § 2254(d).............................................................................................................6, 8, 10
Art. 404(B)(1)..........................................................................................................................8
Art.770.....................................................................................................................................38
La. C.Cr.P. Art. 770(2)............................................................................................................25
La. Code of Criminal Procedure, Article 609.1......................................................................38
La. R.S. 14:64..........................................................................................................................9, 43
La.C.Cr.P. Art.771....................................................................................................................34

## STATE CASES:

State v. Bonanno, 384 So.2d 355(La. 1980)..........................................................................45
State v. Freelon, 26,938(La. App.2nd Cir.5/10/95), 655 So.2d 687......................................45
State v. Fuller, 454 So.2d 119 (La. 1984).............................................................................18
State v. Hogan, 480 So.2d 288 (La. 1985)..............................................................................45
State v. Smith, 2001-2574 (La. 01/14/03), 839 So.2d 1(La., 2003)......................................45
State v. Thompson, 25, 583 (La.App.2nd Cir. 1/19/94), 631 So.2d 555.................................45
State v. William D. Lauga No: 2013-KO-0157.........................................................................11
State v. William D. Lauga, No: 2010 KA 2209........................................................................11

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
_____ Division

| | |
|---|---|
| WILLIAM D. LAUGA | *             CIVIL ACTION |
|       VERSUS | * <br> * NO:_____ SEC:_____ |
| N.BURL CAIN, Warden <br> Louisiana State Penitentiary | * <br> * MAGISTRATE:_____ <br> * <br> * JUDGE:_____ |

### MEMORANDUM IN SUPPORT OF
### PETITION FOR WRIT OF HABEAS CORPUS PURSUANT
### TO TITLE 28 U.S.C. SECTION 2254

MAY IT PLEASE THE COURT:

NOW INTO COURT, comes Pro Se Petitioner William D. Lauga, who respectfully submits this memorandum in support of his petition for writ of habeas corpus, and request that the law and argument contained herein be considered in this matter.

### GROUNDS FOR RELIEF

This petition for writ of habeas corpus is filed pursuant to 28 U.S.C. § 2254. Petitioner is in the custody of respondent pursuant to a state court judgment of conviction that was obtained in violation of the Constitution of the United States.

FEDERAL QUESTIONS PRESENTED:

In particular, Petitioner represents that:

1. WAS MR. LAUGA DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION?

1. A) DID COUNSEL FAIL TO CONDUCT A PROPER INVESTIGATION TO LEARN FACTS NECESSARY TO PRESENT A FULL AND PROPER DEFENSE AND PRESENT EVIDENCE FAVORABLE TO MR. LAUGA CONTRARY TO CONSTITUTIONAL PROTECTIONS SET FORTH BY LOUISIANA AND THE UNITED STATES?

1. B) DUE TO THE INEFFECTIVE ASSISTANCE OF COUNSEL WAS MR. LAUGA DENIED HIS RIGHT OF DUE PROCESS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES WHERE HE WAS DENIED A FAIR AND IMPARTIAL TRIAL AND DENIED THE ADVESARIAL PROCESS DUE TO THE FRADULENT ADMISSION OF HEARSAY TESTIMONY?

1. C) DUE TO THE INEFFECTIVE ASSISTANCE OF TRIAL WAS MR. LAUGA DENIED HIS RIGHT OF DUE PROCESS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION WHERE HE WAS DENIED A FAIR AND IMPARTIAL JURY?

2. DID THE ACTIONS AND/OR INACTIONS OF THE STATE AMOUNT TO INTENTIONAL AND FLAGRANT PROSECUTORIAL MISCONDUCT, VIOLATIVE OF PETITIONER'S FOURTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS OF THE UNITED STATES CONSTITUTION?

3. DID THE IMPROPER ADMISSION OF OTHER CRIMES EVIDENCE PREJUDICE MR. LAUGA AND DENY HIM OF HIS CONSTITUTIONAL RIGHT TO THE DUE PROCESS OF LAW AND A FAIR TRIAL GUARANTEED BY THE UNITED STATES CONSTITUTION SIXTH AND FOURTEENTH AMENDMENTS, FEDERAL RULE 404, AND THE LOUISIANA CONSTITUTION ARTICLE 1§ 16?

4. DID THE TRIAL COURT ERR IN DENYING MR. LAUGA'S MOTION FOR MISTRIAL AFTER THE STATE QUESTIONED MR. LAUGA AS TO A   JUVENILE ADJUDICATION?

5. DID THE COURT ERR IN DENYING MR. LAUGA AN EVIDENTIARY HEARING TO SUBSTANTIATE HIS CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL ON INITIAL COLLATERAL REVIEW?

6. WAS THE SENTENCE CONSTITUTIONALLY EXCESSIVE?

## WRIT GRANT STATEMENT

Petitioner's federal habeas should be granted pursuant to 28 U.S.C. § 2254(d) for the following reasons: there has been a state court adjudication of all the issues presented in this petition; the issues in question involve federal law; the issues were adjudicated in formal state court proceedings; and the adjudication resulted in a decision that was contrary to clearly established federal law under the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution. As discussed below, this petition is timely filed within the delays allowed by law.

## STATEMENT OF THE CASE

William Lauga was charged by Bill of Information with armed robbery in violation of La. R.S. 14:64. Mr. Lauga was arraigned and pled not guilty to the charge on November 3, 2009. On April 26, 2010, jury trial commenced.

Trial continued until April 28, 2010, on which date the jury returned a verdict of guilty as charged. Mr. Lauga filed motions for Post Verdict Judgment of Acquittal and for new trial which were denied by the trial court on August 16, 2010. On that date, Mr. Lauga was sentenced to sixty-five years imprisonment in the Louisiana Department of Corrections at hard labor without benefit of probation, parole, or suspension of sentence. Mr. Lauga also filed a motion to reconsider sentence on October 15, 2010 which was denied by the trial court on October 19, 2010.

On December 28, 2010 Mr. Lauga filed an appeal into the First Circuit Court of Appeal under docket number 2010-KA-2209. On June 10, 2011 the First Circuit Court of Appeal vacated the sentence and remanded the case back to the trial court for sentencing.

Mr. Lauga was re sentenced by the trial court to the same sixty-five years previously sentenced. The First Circuit Court of Appeal again heard the appeal under docket number 2012-KA-0842. On December 21, 2012 the First Circuit Court of Appeal denied Mr. Lauga relief. Mr. Lauga then filed his

3.

appeal to the Louisiana Supreme Court under docket number 2013-KO-0157 which was denied on August 30, 2013.

Mr. Lauga then timely filed his Application for Post-Conviction Relief into the 22nd Judicial District Court, Div. "G"; to the Honorable Judge Scott Gardner on June 24, 2014.

## Timeliness of Application:

This Application is properly before this Court as Petitioner was convicted in the 22nd Judicial District Court, Parish of St. Tammany, State of Louisiana on April 28, 2010.

On June 10, 2011 the Louisiana 1st Circuit Court of Appeals affirmed Petitioner's conviction and sentence on direct appeal. *State v. William D. Lauga, No: 2010 KA 2209 (unpublished decision).* Mr. Lauga had ninety(90) days to seek review by the U.S. Supreme Court, thus Mr. Lauga's conviction and sentence became final on November 28, 2013. The Louisiana Supreme Court denied relief on August 30, 2013, *State v. William D. Lauga No: 2013-KO-0157.*

Petitioner's conviction became final for the purpose of the Anti-Terrorism and Effective Death Penalty Act on November 28, 2013, after the 90 day period for seeking relief in the United States Supreme Court expired. *Roberts v. Cockrell, 319 F. 3d 690(5th Cir. 2003).*

Petitioner timely filed his *Application for Post Conviction Relief* into the trial court (208) days later on June 24, 2014, within one year of the affirmation of his conviction and sentence, preserving both his state post-conviction rights and the federal habeas deadlines established by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244. The trial court denied relief on July 16, 2014. Petitioner was served a copy of that denial on July 21, 2014. Petitioner then filed to the First Circuit Court of Appeals(23) days later on August 14, 2014. The First Circuit Court of Appeals denied Mr. Lauga's Post-Conviction Application on October 23, 2014.(NO. 2014-KW-1203)

Petitioner timely sought writs in the Louisiana Supreme Court(29) days later on November 21, 2014 . The Louisiana Supreme Court denied Petitioner relief on September 25, 2015,(Dkt. No. 2014-

4.

KH-2438), through the Louisiana State Penitentiary legal mail delivery system, signing for same in accordance with penitentiary rules and procedures

Petitioner now files this Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody and Memorandum in Support,(60) days later, on Nov 23, 2015, by delivering same to the Classification Officer Assigned to his Unit, receiving receipt for same in accordance with penitentiary rules and procedures and therefore, this application is timely and proper before this Honorable Court for its consideration.

## STATEMENT OF FACTS

In the early morning hours of January 25, 2009, while preparing to close Tooloula's Bar, Joseph Brooks had one last patron come inside the bar. Mr. Brooks alleged the man identified himself as a U.S. Marshall. Mr. Brooks testified that this individual pulled a gun *and held it to his neck*. A brief struggle ensued and Mr. Brooks was able to flee the bar and call 911. After police arrived Mr. Brooks told police that the only thing missing was about three dollars from the tip jar.

Approximately three weeks after the incident police asked Mr. Brooks to look at a photo line-up and he identified William D. Lauga as the man that confronted him.

On August 28, 2009 Mr. Lauga was arrested and charged with armed robbery.

## CLAIM NO. 1

### WAS MR. LAUGA DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION?

In every aspect of **Mr. Lauga's** Due Process Protections, Trial Counsel failed to hold the State to the adversarial process mandated by the Constitution of the United States and the State of Louisiana. **Mr. Lauga** offers the following in support of his being denied proper assistance of counsel and seeks the appointment of counsel to further develop the claims.

LEGAL STANDARDS:

As accused's **Sixth Amendment** right to the assistance of counsel is one of the most fundamental components of our criminal justice system. Through legal representation, the defendant's other pretrial rights are secured. *United States v. Cronic*, 446 U.S. 648, 104 S.Ct.2039, 80 L.Ed.2d 657 (1984); *Gideon v. Wainwright*, 372 U.S.335, 83 S.Ct. 792, 9 L.Ed.2d 799(1963).

The right to counsel means the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S.759, 90 S.Ct. 1441, 25 L.Ed.2d 763(1970). ... the adversarial process protected by the **Sixth Amendment** requires that the accused have "counsel acting in the role of an advocate". (Citation omitted). The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted- even if defense counsel may have made demonstrable errors- the kind of testing envisioned by the **Sixth Amendment** has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated. As Judge Wyzanske has written: "While a criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills, neither is it a sacrifice of unarmed prisoners to gladiators". *Cronic*, 466 U.S. at 656-657.

**Mr. Lauga** would ask this court to take notice that he has not been trained in the law. He attached a Motion seeking the assistance of appointed counsel to further supplement his claims after a proper investigation and the obtaining of the needed records during initial P.C.R. The Court failed to adjudicate the motion. **Mr. Lauga** has asked every Court for Assistance of Counsel.

In *Martinez v. Ryan*, 132 S. Ct. 1309, 182 L. Ed. 2d 272(2012) the Court stated that "Where as here, the initial-review collateral proceeding is the first designed proceeding for a prisoner to raise a claim of ineffective assistance of trial counsel, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective assistance claim. This is because the state habeas court

6.

"looks to the merits of the clai[m]' of ineffective assistance, no other court has addressed the claim, and 'defendant's pursuing first tier review...are generally ill equipped to represent themselves' because they do not have a brief from counsel or an opinion of the court addressing their claim of error". *Halbert v. Michigan*, 545 U.S. 605, 125 S.Ct. 2582, 162 L.Ed 2d 552(2005); See also *Douglas v. California*, 372 U.S. 353, 257-58, 83 S.Ct. 814, 9 L.Ed.2d 84(1963). The right to assistance of counsel during post conviction for the presentation of ineffective assistance claims was clarified in *Trevino v. Thaler*, 133 S.Ct.1911, 185 L.Ed.2d 1044 (2013). **Mr. Lauga** still seeks assistance.

## ANALYSIS:

In the instant case, the first question to be determined here is whether counsel's representation was so inadequate that it "entirely failed to subject the prosecution's case to a meaningful adversarial testing", thus, constituting a denial of **William Lauga's Sixth Amendment** rights without the necessity of finding specific prejudice. **Cronic,** 466 U.S. at 659.To this question, the answer is unequivocal and overwhelmingly, "yes".

In addition, the actions and inactions of counsel in this case were such that a "reasonable probability" exists that "but for counsel's unprofessional errors, the result of the proceedings would have been different". **Strickland**, 466 U.S. at 694. Thus, under both the **Cronic and Strickland** criteria, **William Lauga** was denied the adversarial process and the right to a fair trial due to the ineffective assistance of his trial counsel.

Ineffectiveness of counsel is clear if the attorney fails to investigate a plausible line of defense or interview available witnesses. In the instant matter, counsel did not so much as consult with his client to discuss a defense where he would have learned of alibi witnesses that were available. "Counsel's actions are usually based, quite properly... on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information." **Strickland**, 104 S.Ct. At 2066. "Effective counsel includes familiarity of counsel with the case and an

7.

opportunity to investigate it if necessary in order to meaningfully advise the accused of his options".
*Windom v. Cook*, 423 F.2d 721 at 721 (5th Cir. 1970), quoting from *Calloway v. Powell*, 392 F.2d 886
(5th Cir.1968).

Counsel "simply failed to make the effort to investigate, therefore 'did not choose, strategically
or otherwise, to pursue one line of defense over another, instead, simply abdicated his responsibility to
advocate his client's cause'. *Nealy v. Cabana*, 764 F.2d 1173, 1178 (5th Cir. 1985), *Profitt v. Waldron*,
831 F.2d 1245 (5th Cir.1987); see also *Sanders v. Ratelle*, 21 F.3d 1446(9th Cir.1994).

## PREJUDICE:

Under the **Cronic** standard a specific finding of prejudice is not necessary. In the instant matter
counsel's ineffectiveness was in fact prejudicial to the defense.

The test for prejudice under Strickland is whether there is a "reasonable probability that, but for
counsel's unprofessional errors, the results of the proceeding would have been different". A defendant
need not show that the attorney's mistakes altered the outcome of the trial. Rather a "reasonable
probability is a probability sufficient to undermine confidence in the outcome". *Id.*, 466 U.S. at 694.
Clearly a simple investigation by counsel would have produced alibi witnesses showing that **Mr.
Lauga** could not have been the person that robbed the bar in St. Tammany Parish, public records from
the Orleans Parish District Attorney's Office clearing him of the robbery in that Parish, and Public
Records from the Clerk of Court in St. Bernard Parish **(See exhibit "A")** dismissing all charges against
**Mr. Lauga** in that Parish, most assuredly would create reasonable doubt of **Mr. Lauga's** guilt. This
probability is clearly sufficient to undermine confidence in the outcome.

Had defense counsel done a simple investigation, he would have learned prior to trial that **Mr.
Lauga** did in fact sell the firearm which was "**the crucial evidence**" presented by the prosecution; to
Cash America Pawn Shop(8801 West Judge Perez Drive Chalmette, La. 70043) on October 1st, 2008,
and that the same firearm was re-sold by the pawn shop to **Mr. George P. Krider Jr.** of Chalmette on
January 6th, 2009. **Nineteen days** prior to the alleged armed robbery that **Mr. Lauga** is purported to
have committed with the exact same firearm.

Numerous courts have granted relief for ineffective assistance of counsel on the basis of
counsel's failure to investigate and prepare viable theories of defense. **Nealy**, supra(alibi); **Profitt**,

8.

supra(insanity); *DeLuca v. Lord*, 77 F.3d 578(2nd Cir. 1996), *cert. denied*, 117 S.Ct. 83, 136 L.Ed.2d 40(1996)(extreme emotional disturbance). In the instant case counsel failed to present this defense due to the complete lack of an investigation into the gun.

*THE ORIGIN OF THE RIGHT TO COUNSEL:*

The origin of the right to effective assistance of counsel stems from the due process clause of the **Fourteenth Amendment** which entitles any defendant to a trial free from fundamental unfairness, including any unfairness which would stem from blatantly incompetent counsel. *Fitzgerald v. Estelle*, 505 F.2d 1334(5th Cir. 1974). Any person charged with a criminal offense is entitled by right to counsel provision of the **Sixth Amendment** to reasonably effective assistance of counsel.

Until 1984, the laws regarding ineffective counsel had been in constant flux, with the U.S. Supreme Court leaving particular standards up to the lower courts. However, with the advent of *Strickland v. Washington*, 104 S.Ct. 2052(1984), the U.S. Supreme Court clarified the law into a workable standard of performance by which all courts could rely upon in judging ineffective counsel. The basic law dictated by the **Strickland** opinion is as follows:

"The **Sixth Amendment** right to counsel is a right to the effective assistance of counsel, and the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied upon as having produced a just result"(page 2063-2064). "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction requires that the defendant show, first, that counsel's performance was deficient, and , second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial". (pages 2064-2065)

"The proper standard for judging attorney performance is that of reasonably effective assistance,considering all the circumstances. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show the counsel's representation fell below

an objective standard of reasonableness. A fair assessment of attorney performance requires that every

effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time".

(Pages 2064-2067)

"With regard to the required showing of prejudice,the proper standard requires the defendant to
show that there is a reasonable probability that but for counsel's unprofessional errors, the
results of the proceeding would have been different. A reasonable probability is a probability
sufficient to undermine confidence in the outcome. A court hearing an ineffective claim must
consider the totality of the evidence and circumstances that were presented before the judge or
the jury during a trial on the merits". (Pages 2067-2069).

The **Strickland** Court reiterated the basic duties espoused by the famous case of _Powell v._

_Alabama_, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed.2d 158(1932) when it stated:

"[R]epresentation of a criminal defendant entails certain basic duties. Among those duties
include the duty of loyalty, the duty to advocate the defendant's cause, duties to consult with the
defendant on important decisions, and to keep the defendant informed of important
developments in the course of the prosecution, and a duty to bring to bear such skill and
knowledge as will render the trial a reliable adversary testing process". **Powell**, 53 S.Ct. 55, at
pages 63-64 (1932).

The **Strickland** decision goes on to state that a court deciding an actual ineffectiveness claim

must judge the reasonableness of counsel's challenged conduct on the facts of the particular case view

as of the time of counsel's conduct. The court must decide whether, in light of all the circumstances, the

identified acts or omissions were outside the wide range of professionally competent assistance.

Now that the foundation for the approach to ineffective counsel has been laid out, the following

cases illustrate specific examples clarifying the law. Although these cases came before the **Strickland**

decision, the **Strickland** Court specifically states that the principles governing ineffective claims that

have been laid down in this decision do not overrule any prior decisions because we are not so much

looking at new laws; we are looking at a synthesis of old guidelines in determining ineffective counsel.

In summary, the **Strickland** decision synthesizes, summarizes and clarifies all pre-existing lower court

methodology in determining ineffective counsel.

10.

Some courts have set more rigid standard requiring the use of an outcome determinative test in making out a finding of prejudice caused by ineffective assistance of counsel. However, Petitioner's burden is not that overwhelming. **Strickland** specifically disavowed use of an outcome determinative test. Petitioner must only show a reasonable probability of a different outcome.

In *State v. Fuller*, 454 So.2d 119 (La. 1984), the Louisiana Supreme Court implicitly adopted the **Strickland** standard of review for ineffective claims in Louisiana cases.(454 So.2d at 125, n.9).

In the instant case counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied upon as having produced a just result. Petitioner will direct the Court's attention to his denial of effective assistance of counsel before, during and after the trial. The foregoing offers support for **Mr. Lauga's** arguments concerning the total denial of the adversarial process due to counsel's ineffectiveness.

### CLAIM 1 A.

**DID COUNSEL FAIL TO CONDUCT A PROPER INVESTIGATION TO LEARN FACTS NECESSARY TO PRESENT A FULL AND PROPER DEFENSE AND PRESENT EVIDENCE FAVORABLE TO MR. LAUGA CONTRARY TO CONSTITUTIONAL PROTECTIONS SET FORTH BY LOUISIANA AND THE UNITED STATES?**

### LAW AND ARGUMENT

Ineffectiveness of counsel is clear if the attorney fails to investigate a plausible line of defense or interview available witnesses. These can hardly be considered strategic choices since counsel by his failure has not obtained the facts upon which such a tactical decision could be reasonably made. Nealy,764 F.2d at 1178; *Profitt v. Waldron*, 831 F.2d 1245 (5th Cir. 1987).

In the instant matter counsel was notified and attended a hearing on other crimes in evidence. The trial court held that an armed robbery that **Mr. Lauga** had been charged with would be allowed to be entered into evidence. Even though **Mr. Lauga** presented sufficient evidence of his innocence to cause the charge to be dismissed by the Orleans Parish District Attorney. Counsel failed to conduct

11.

even the pre-trial investigation needed to obtain this evidence. These records are a matter of public record and even a minimal pre-trial investigation would have discovered this.

Pre-trial investigation is essential to the effective assistance of counsel. A lawyer must engage in a reasonable amount of pretrial investigation and "at a minimum...[ make an independent investigation of the facts and circumstances of the case"]. *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985).

> ...strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make reasonable decisions that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances,       applying a heavy measure of deference to counsel's judgments. *Strickland v. Washington*, 466 U.S. 668, 690-691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and, the necessity for investigation increases with the "seriousness of the offense and the gravity of the punishment". *Bryant v. Scott*, 28 F.3d 1411, 1417 (5th Cir. 1994).

In May of 1984, the United States Supreme Court rendered two significant decisions regarding claims of ineffective assistance of counsel. **Cronic**, *supra*; **Strickland**, *supra*. In **Cronic**, the Court held that "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of **Sixth Amendment** rights that makes the adversary process itself presumptively unreliable". **Cronic**, 466 U.S. at 659. No specific showing of prejudice is necessary. On the other hand, if counsel made errors but not so serious as to deny the right to counsel altogether, then the reviewing court must determine if prejudice to the defendant resulted. **Strickland**.

Under **Strickland**, prejudice is established if the defendant shows that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome". **Cronic**, 466 U.S. at 694. Assessments of prejudice are necessarily fact-intensive, tied to the peculiar circumstances of each individual case. **Nealy**, 764 F.2d at 1179.

12.

In the instant matter the trial court held a pre-trial hearing on the admission of evidence of **Mr. Lauga's** alleged involvement in an Orleans Parish armed robbery. The State presented a substantial amount of evidence to the jury as it related to that robbery. Trial counsel failed to investigate this matter prior to trial, even though, he had been put on notice that the State intended to use this evidence and the information needed to refute the State's case was a matter of public record. Even a simple investigation would have produced the evidence presented that caused the Orleans Parish District Attorney to dismiss the charges. Counsel failed to present any of that evidence or any of those witnesses to defend against the allegations. Although it is not required that a lawyer be a private investigator in order to discern every possible avenue which may affect the client, counsel must make an <u>effort to investigate the obvious</u>. *House v. Balkcom*, 723 F.2d 608(11th Cir. 1984).

**Mr. Ierardi (court record pg. 101-103) told the court, "Well, I have evidence that greatly negates many of the points that the State would make in that case."** If Mr. Ierardi had this evidence as he told the court, why did he not present it at **Mr. Lauga's** trial after he informed the court that he understood what the court expected of him?

The State also introduced testimony of the daughter of the Chief of Detectives in St. Tammany Parish. Her testimony was that **Mr. Lauga** told her that he was some type of Law Enforcement Officer. **Mr. Lauga** adamantly denied these allegations. The trial counsel failed to interview other witnesses[1] that were present during the conversation to support **Mr. Lauga's** position that he never told anyone that he was involved in law enforcement.

The Judge notified the attorneys that he had granted the State's Motion to allow the 404(B) evidence to be presented. The State then presented substantial amounts of evidence as it related to

---

1 Jeremy Merwin, and Shondi Merwin, who were with Mr. Lauga at Mudbugs in Slidell the night the Chief of Detectives daughter and Ms. Alyssa Lee said Mr. Lauga informed them he was a United States Marshal, both of these witnesses would have testified to the fact that Mr. Lauga never told anyone that he was a member of any type of Law Enforcement.

another crime, **Mr. Lauga** was never convicted of this crime but the evidence was still admitted. The allowance of so much alleged other crimes evidence was judicially fatal to the defense. Counsel's failure to investigate the alleged 404(B) evidence, and at a minimum present the evidence presented when the Orleans Parish District Attorney found the charges unsubstantiated, denied **Mr. Lauga** of the adversarial process. The failure of counsel to even investigate matters clearly in the record of the proceedings in Orleans Parish, and present this evidence, denied **Mr. Lauga** of his constitutional rights to a fair trial and the assistance of counsel.

In *Baldwin v. Maggio*, 704 F.2d 1325 (5th Cir. 1983), the court stated that "essential to the rendition of constitutionally adequate assistance in either the guilt or sentencing phase is reasonably substantial, independent investigation into the circumstances and the law from which potential defenses may be derived". The court went on to say that a determination of whether an investigation is reasonably adequate, proper, and necessary depends upon a variety of factors including the number of issues in the case, the relative complexity of those issues, the strength of the State's case, and overall strategy of trial counsel. In the instant matter, the strategy of trial counsel apparently was to not present any evidence, no matter how easy it was to obtain, to rebut the State's case in relation to other evidence, but, simply allow **Mr. Lauga** to get on the stand and deny the evidence presented by the State.

Not only did counsel fail to investigate the 404(B) evidence, he failed to investigate the instant allegations. A reasonable amount of pre-trial investigation would have, at the very minimum, allowed an alibi witness to testify that **Mr. Lauga** could not have possibly committed the Slidell robbery. This witness[2], who would have testified that they were together at the time of the Slidell robbery(which is what she told the investigating detective) and it would have been an impossibility for **Mr. Lauga** to

---

2   Ms. Shondi Merwin, a Hancock County Mississippi Sheriff's Deputy, would have testified to the fact that we were indeed together all night in the same bed at Ms. Noni Chambers house in New Orleans East.

14.

have committed the Slidell robbery. **Mr. Lauga** made several attempts to notify trial counsel of this witnesses location at the time. Due to counsel's failure to discuss the case with him prior to the day of trial, he was not able to discuss this witness with counsel until the day of trial.

A reasonable amount of pre-trial investigation by Trial Counsel would have produced evidence that countered the 404(B) evidence produced by the State. Even the most basic amount of pre-trial investigation would have produced the alibi witness who signed a sworn affidavit to **Mr. Lauga's** whereabouts, would have produced the statement from the guard at the casino robbery, would show that the gun belonging to **Mr. Lauga**, was sold to the Cash America Pawn Shop, 8801 West Judge Perez Drive, Chalmette, La. 70043 On **October 1st, 2008**. And that the gun was then re-sold to **Mr. George P. Krider Jr.** of Chalmette on **January 6th, 2009**; [19 days] prior to the instant matter, would have produced witnesses that he was not even in Slidell the night of the robbery, and would have discredited the recanted story of Ms. Rebecca Gilbert.

When there was so much evidence to support **Mr. Lauga** was not involved in either the Slidell or Orleans Parish robbery, why would counsel not present this evidence? Could it be this was the strategy of trial counsel, or was this a total failure of the adversarial process due to the ineffective assistance of counsel? **Mr. Lauga** presents to this court that he has been denied his constitutional rights to the effective assistance of counsel and the **DUE PROCESS OF LAW.**

The state sought the introduction of the implications from the Orleans Parish robbery on the basis that the robber posed as law enforcement. At no time did Ms. Gilbert state, or testify, that the robber posed as a member of law enforcement. Ms. Gilbert initially told police she could not identify anyone because the alleged robber had black paint on his face, it was dark and he stood behind the guard the entire time. Now, years later, she positively identifies **Mr. Lauga** as the robber. Counsel had a duty to obtain Ms. Gilbert's prior statement for impeachment purposes. Clearly counsel was ineffective in the adversarial process where he failed to investigate this information.

15.

Mr. Lauga argues that he has made attempts to gain all of this evidence prior to the filing of the instant application. Due to provisions set forth under **La. Law, Title 44,** of the public records law, he is not a person by the meaning of the law, therefore cannot obtain these records which is why he has asked every court to appoint him a counsel to assist.

It is clear that petitioner has been denied effective assistance of counsel at trial and this claim is regulated to initial collateral review proceedings because an evidentiary hearing is needed to ascertain the truth of the allegations, which when proven true, will entitle petitioner to relief, and as such, the same rights afforded to defendants claiming constitutional violations on direct appeal should be afforded. *Martinez v. Ryan*, 132 S.Ct. 1309, 182 L.Ed 2d 272 (2012) See also; *Lindsey v. Cain*, 476 Fed.Appx. 777,(2012); *Miller-El v. Cockrell*, 537 U.S 322,327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

The Court in *Martinez* stated:

"Where as here, the initial-review collateral proceeding is the first designed proceeding for a prisoner to raise a claim of ineffective assistance of trial counsel, the collateral proceedings in many ways the equivalent of a prisoner's direct appeal as to the ineffective assistance claim. This is because the state habeas court 'looks to the merits of the clai[m]' of ineffective assistance no other court has addressed the claim, and 'defendants pursuing first tier review... are generally ill-equipped to represent themselves' because they do not have a brief from counsel or an opinion of the court addressing their claim of error". *Halbert v. Michigan*, 545 U.S. 605, 617 125 S.Ct. 2582, 162 L.Ed 2d 552(2005) See *Douglas*, 372 U.S., at 257-58, 83 S.Ct. 814.

In the instant case, the charge was serious enough to require an adequate investigation by an attorney prior to making strategic choices. Strategic choices made after less than a complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations of an investigation. In other words, counsel had a duty to make reasonable decisions that makes particular investigations unnecessary. *Strickland* at 104 S.Ct. 2066.

Counsel simply failed to conduct any investigation, therefore 'did not choose, strategically or otherwise, to pursue one line of defense over another." *Nealy*, 764 F.2d at 1178, *Bryant,* supra, *Profitt,*

supra, *Gray*, supra, *Sanders v. Ratelle*, 21 F.3d 1446(9th Cir. 1994).

It is well established that an attorney's failure to interview available witnesses should not be allowed to automatically defend his omissions simply by raising the shield of "trial strategy and tactics". See *Crisp v. Duckworth*, 743 F.2d 580, 584(7th Cir. 1984). In this case, counsel failed to investigate corroborating witnesses that were readily available and had given statements previously. The complete failure to investigate potentially corroborating witnesses can hardly be considered a tactical decision. See *U.S. v. Debango*, 780 F.2d 81(D.C. Cir. 1986). Also see *U.S. Ex Rel Cosey v. Wolff*, 727 F.2d 656, 658(7th Cir.1984),(where it was error for counsel who failed to investigate even one of five potential witnesses).

In *Vella v. Estelle*, 708 F.2d 954(5th Cir. 1983), the court stated that "in most cases a single critical error may render counsel's performance constitutionally defective". Petitioner has already pointed to several errors of counsel which rendered his trial fundamentally unfair but, no error as defective as counsel's failure to investigate witnesses that had already made statements to authorities in Orleans and St.Tammany parishes. Counsel failed to even investigate matters that are readily available public records. A simple phone call to the Orleans Parish District Attorney would have been useful to the defense, a check of the Court Minutes from St. Bernard Parish **(See exhibit "A")** would have shown **Mr. Lauga** had no prior convictions[3], and most importantly a records check through the A.T. F. or a subpoena of the pawn shop would have produced the documents to prove **Mr. Lauga** no longer had the gun that was the **prosecution's main evidence** against him, but counsel failed to even do that.

In *Martin vs. Maggio*, 711 F.2d 1273(5th Cir. 1983), the court stated that because the defendant's trial "can be decisively affected by actions or defense counsel in preparing the case, we have insisted that effective counsel conduct a reasonable amount of pre-trial investigation". In the instant matter, it is quite obvious, there was little to no investigation conducted. Counsel had a duty to

---

3   Discussed in depth in Claim 1B.

investigate. ABA Standards for Criminal Justice, Standard 4-4.1. This failure of counsel demands that the matter be remanded for new trial.

## CLAIM 1 B.

DUE TO THE INEFFECTIVE ASSISTANCE OF COUNSEL WAS MR. LAUGA DENIED HIS RIGHT OF DUE PROCESS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES WHERE HE WAS DENIED A FAIR AND IMPARTIAL TRIAL AND DENIED THE ADVESARIAL PROCESS DUE TO THE FRADULENT ADMISSION OF HEARSAY TESTIMONY?

### LAW AND ARGUMENT

During the testimony of **Mr. Lauga**, the State improperly introduced hearsay evidence of an alleged **juvenile adjudication** for armed robbery in St. Bernard Parish. The introduction of this evidence was inadmissible and mandated a mistrial under **Rule 404**. When the Court asked the State what evidence they had as to this inadmissible alleged armed robbery (**See exhibit "B", court record pg. 432-33 & 439,441-42**), the State replied;

STATE:  The only thing I have is that he was convicted of armed robbery in 1993. And that

came from one of the people at the Sheriff's office in St. Bernard Parish.

JUDGE:  So you don't have anything.

STATE:  I don't have anything showing one way or the other what it was.

Clearly the introduction of this false hearsay evidence of alleged crime of armed robbery ( See exhibit "A") during the cross examination was prejudicial to the defense. **Mr. Lauga** argues that the State knew, or should have known, this evidence was false, clearly in violation of the holdings of *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). A simple investigation by trial counsel would have revealed that the conviction alleged by the State never happened. **Mr. Lauga** was able to obtain the proof that this alleged prior armed robbery conviction never happened through a simple records request and has attached a copy of the documentation. The introduction of this false hearsay evidence of another armed robbery, to the jury, was fatal to the defense and required a mistrial

under Art.770. Surely the probability of prejudice in the improper admission of this false evidence of

other *alleged* crimes raises a probability sufficient to undermine confidence in the outcome. A simple

public records request by trial counsel would have proven that **Mr. Lauga** was never involved in the

alleged 1993 armed robbery, yet counsel failed to even do this.

The defense attorney did adamantly object to the admission of this alleged evidence. The Court

sustained the objection and the defense attorney motioned the court for leave to file writs. The Court

denied the motion for leave. Defense counsel continued with objections. Even though the court denied

the motion for leave, this denial does not overcome the defense counsels complete failure to seek writs

where the First Circuit Court of Appeal would have followed the law as set out in Article 770 and

granted a mistrial. Counsel's failure to seek writs failed to subject the State's case to an adversarial

testing and therefore denied **Mr. Lauga** of a fair trial. This error demands that the conviction and

sentence of **Mr. Lauga** be vacated and set aside and a new trial date be set with effective counsel to

assist **Mr. Lauga** obtain a fair trial.

### CLAIM 1 C.

**DUE TO THE INEFFECTIVE ASSISTANCE OF TRIAL WAS MR. LAUGA DENIED HIS RIGHT OF DUE PROCESS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION WHERE HE WAS DENIED A FAIR AND IMPARTIAL JURY?**

### LAW AND ARGUMENT

[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial,

"indifferent" jurors. The failure to accord an accused a fair hearing violates even the minimal standards

of due process... In the language of Lord Coke, a juror must be "indifferent as he stands unsworn". Co.

Litt. 155b. His verdict must be based upon the evidence developed at trial. *Thompson v. City of*

*Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654. This statement is true regardless of the

heinousness of the crime charged, the apparent guilt of the offender, or the station in life which he

occupies. It was so written into our law as early as 1807 by Chief Justice Marshall in Burr's Trial

19.

416(1807), "The theory of the law is that a juror who has formed an opinion cannot be impartial". *Reynolds v. United States*, 98 U.S. 145, 155, 25 L.Ed. 244, *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)(footnote omitted).

In the instant case the petitioner, **Mr. Lauga**, was denied a fair and impartial jury due to counsel's failure to use peremptory challenges to remove biased jurors. Counsel's hoarding of peremptory challenges allowed several biased jurors to be seated. This failure severely prejudiced petitioner's case and denied him of the fair trial constitutionally guaranteed to him.

During the Voir Dire examination, Mr. Ierardi, the Defense Attorney, posed the following question to the prospective jurors;

**MR. IERARDI:**     If you had a choice between convicting an innocent man or freeing a guilty man, what would you rather do?

This is a simple question designed to determine if the potential jurors could follow the reasonable doubt instruction and render a verdict in accordance with the law. The following Prospective Jurors answered the question;

**JUROR ALFORD:** "Hard question. So since you can't retry somebody if you let a man off that was guilty, you couldn't retry him, I would rather put an innocent man in jail with the hope that he get off, than let a free man go that couldn't be tried again when he was found guilty.

**MR. IERARDI:**     Thank you. Ms. Edmonds?

**JUROR EDMONDS:**     I agree with guilty.

During the jury selection Mr. Ierardi used nine of his peremptory challenges to remove biased jurors. Mr. Alford was the ninth defense challenge and was removed. Yet, with three challenges remaining defense allowed Juror Edmonds and several others to serve on the jury. The ineffectiveness of the trial counsel did not end with Juror Edmonds.

**JUROR PHILIPPE:**     Depends on the charge. To answer that.

**MR. IERARDI:**     Generally speaking, you can't answer one way or the other.

20.

| | |
|---|---|
| **JUROR PHILIPPE:** | Well, if he is... I'll convict an innocent if it's a misdemeanor. But I'm not going to let a serial murderer out, no. |
| **MR. IERARDI:** | So you would rather, if it's a serial murderer.. |
| **JUROR PHILIPPE:** | It all depends on what you got going there. If it was both misdemeanors, would let the guilty guy go. |
| **MR. IERARDI:** | If it's a felony, you would rather convict the innocent, just to be sure. |
| **JUROR PHILIPPE:** | If it's a severe guy, he doesn't need to be out. |

Clearly jurors Edmonds and Philippe should have been struck from the jury by the defense counsel. Both of these jurors explained that they had no problems sending an innocent man to prison. If the obvious bias was not reason enough to use one of the remaining peremptory challenges on Juror Philippe, it should have been used because he was "good buddies" with a prosecutor". Counsel was clearly ineffective for not striking this juror.

Both Juror Philippe and Juror Edmonds stated that they would rather convict an innocent man than let a guilty man go free. Clearly exhibiting a biasness that was without doubt prejudicial to **Mr. Lauga**. The responses of these jurors as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied. Counsel rendered ineffective assistance for not striking these two jurors.

Four of the jurors selected to serve had relationships with law enforcement. Juror O'Malley was related to a sitting Judge **in this jurisdiction**, Juror Trahan's father was a criminal trial attorney, Juror Robinson was directly related to the former Sheriff, Juror Ledet actually worked for the Court **in this district**, and, of course, there is always Juror Philippe who is "good buddies" with the prosecutor. Even though these jurors stated they could be fair, their comments continued to show their prejudicial stance. Defense counsel had three unused challenges that should have been used to remove these prejudicial jurors. To allow these jurors to serve in judgment of **Mr. Lauga** was not only prejudicial, but, was a denial of his **Sixth Amendment** right to the effective assistance of counsel and his **Fourteenth**

21.

**Amendment** right to a fair tribunal. **Mr. Lauga** never had an opportunity to a fair trial and this denial mandates a new trial.

*CUMULATION OF INEFFECTIVE ASSISTANCE OF COUNSEL:*

**The Court Must** review the totality of the circumstances of the trial to ascertain whether the trial *itself* met the requirements of fundamental fairness, regardless of the existence of an individual constitutional error.

In ***Derden v. McNeel***, 938 F.2d 605(5th Cir. 1991), the panel initially adopted the theory of cumulative error in habeas corpus review, yet when review was granted *en banc*, a splintered court backed away from the earlier holding. See: ***Derden v. McNeel***, 978 f.2d 1453, 1454(5th Cir 1992)(en banc). However, in ***Taylor v. Kentucky***, 436 U.S. 478, 487 n.15, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978); the United States Supreme Court reversed a state conviction upon finding that "the cumulative effect of the potentially damaging circumstances of this case violated the Due Process guarantee of fundamental fairness..."

In assessing the prejudice resulting from counsel's deficient performance the reviewing court may not simply review every claimed error individually to determine whether it alone prejudiced the defense. Rather, the court must assess prejudice on the basis of cumulative effect of counsel's errors on the fairness of the trial. See ***Kyles v. Whitley***, 115 S.Ct. 1555, 1567(1995).

Clearly trial counsel failed to conduct any reasonable investigation into the matter. Even the most basic of investigations would have produced **Mr. Lauga's** criminal record. If armed with Lauga's criminal record, several of the State's alleged facts relating to previous convictions would have easily been shown to be a misrepresentation of facts being presented to the Jury. Simply armed with the criminal record of **Mr. Lauga**, these allegations would have been disputed, thus, avoiding much of the prejudicial impact of the accusations of prior convictions for armed robbery.

22.

There were several prejudicial errors of the trial counsel and the cumulative effect of counsel's errors influenced the fairness of the trial.

It is clear that **Mr. Lauga** has been denied the assistance of counsel assured every citizen through the constitutional provisions of the **Fourteenth and Sixth Amendment** of the United States Constitution. **Mr. Lauga** seeks an evidentiary hearing, with the assistance of appointed counsel, and an Investigator, to perfect the record on the claims presented herein. Counsel's failure were so egregious as to deny **Mr. Lauga** of his right to the assistance of counsel.

When a true adversarial criminal trial has been conducted-even if the defense counsel may have made demonstrable errors- the kind of testing envisioned by the **Sixth Amendment** has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated. As Judge Wyzanske has written: "While a criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills, neither is it a sacrifice of unarmed prisoners to gladiators". **Cronic**, 466 U.S. at 656-657. Trial Counsel in the instant matter clearly sacrificed **Mr. Lauga** to the State. **Mr. Lauga** deserves a new trial.

## CLAIM NUMBER 2.

DID THE ACTIONS AND/OR INACTIONS OF THE STATE AMOUNT TO INTENTIONAL AND FLAGRANT PROSECUTORIAL MISCONDUCT, VIOLATIVE OF PETITIONER'S FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS OF THE UNITED STATES CONSTITUTION?

### LAW AND ARGUMENT

**Prosecutorial Misconduct**

In the instant case, **Mr. Lauga** avers his conviction and sentence were obtained in violation of his 5th, 6th, 8th, and 14th Amendment Rights under the United States Constitution, as a result of knowing and intentional Prosecutorial Misconduct.

When presenting a claim of prosecutorial misconduct, and/or Malicious Prosecution, Petitioner must show that the actions of the prosecutor so infected the trial with unfairness as to make the resulting conviction a denial of Due Process, and "the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial". *Kutzner v. Johnson*, 242, F.3d 605, 609(5th Cir. 2001); *Unites states v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481(1985). The Supreme Court has recognized that prosecutorial misconduct may 'so infect the trial with unfairness as to make the resulting conviction a denial of Due Process'. *Greer v. Miller*, 483 U.S. 756,765, 107 S.Ct. 3102, 97 L.Ed.2d 618(1987)(quoting *Donnelly v. DeChristophoro*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431(1974).

The appropriate standard of review is the narrow one of Due Process and not the broad exercise of supervisory power. *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144(1986).

Petitioner avers that the Prosecutorial Misconduct presented herein so infected the trial with unfairness that he was denied Due Process, and the Misconduct was of such significance as to result in the denial of a fair trial.

In accordance with the statutory provisions of the Louisiana Code of Criminal Procedure, a pre-trial hearing was conducted on the introduction of other crimes evidence. During this hearing the State Presented evidence of an armed robbery that was committed at a Orleans Parish casino. The State alleged this crime was committed by **Mr. Lauga** even though the charges had been dropped by the Orleans Parish prosecutors. After several hearings on the matter, and over the objections of the defense, the Court allowed this evidence to be introduced.

During the trial the State introduced evidence as to **Mr. Lauga's** involvement in the Orleans Parish robbery. This evidence consisted of one witness who had changed her story from the original statement given to authorities as to **Mr. Lauga's** involvement. The State' s entire argument was that the

24.

crimes were similar due to both crimes happening at night, with a gun, the wearing of dark clothing, the

taking of cash and the false representation of law enforcement. The State was attempting to present to

the jury that the robber posed as a law enforcement officer in both robberies. The following exchange

took place during the direct examination of the eyewitness in the Orleans Parish robbery.

Q:    Did the defendant have any type of disguise on?

A:    Yes.

Q:    What was on his head?

A:    He was wearing a black cap, black face paint. And then a black wardrobe, as far as I can remember. I don't have much more specific than that.

Q:    What was written on his cap?

A:    It was a logo of some kind. Lettering. I'm not quite sure.

Q:    Do you remember what the letters were?

A:    It was white lettering.

Q:    If the surveillance film showed that your office reviewed that the cap had the letters S-W-A-T on it would that sound.....

### DEFENSE OBJECTS TO THE EXTREME LEADING OF THE WITNESS

The Court sustained the objection.

The argument of the State was that these crimes were similar because in both instances the

perpetrator was alleged to have posed as a law enforcement officer. The question before the court is if

the victim did not know that he was supposed to be posing as a law enforcement agent, which the

testimony clearly supports that she did not realize this, were these crimes similar.

In the Slidell robbery it was alleged that the perpetrator clearly told the alleged victim that he

was a U.S. Marshall. No testimony was ever given that the Casino robber ever made any type of

reference to being involved with law enforcement.

25.

Then the State attempted to introduce yet another crime based on hearsay evidence. No hearings were held as to this alleged 404(B) evidence nor was any type of *Prieur* hearing ever conducted. The defense had not been notified that the State intended to introduce this hearsay evidence.

In this matter the State introduced evidence of an alleged juvenile armed robbery without notifying the defense of the intent. On Record Page 432, the following exchange took place during the State's cross examination of **Mr. Laugar**;

Q:     Have you ever been in trouble before?

A:     Arrest-wise or ever convicted?

Q:     In St. Bernard Parish?

DEFENSE:     Object to that as irrelevant.

COURT:     Sustained.

Q:     You ever had a conviction in St. Bernard as a juvenile?

A:     No sir, do not.

Q:     You were never adjudicated a juvenile delinquent?

A:     No sir, I was not.

Q:     **For Armed Robbery, you were never... (emphasis added).**

At this time the defense adamantly objected to the severe prejudicial nature of this line of questioning and sought a mistrial. A bench conference was held. During this bench conference the judge excused the jury to allow arguments outside the hearing of the jury. During this time the defense attorney stated;

Def.Aty: Your Honor, this would also, again, as 772 points out, something that is evidence for crime not admissible. If the State wanted to bring that one in as they did the New Orleans crime, they could have filed a 404(B) notice.

They failed to do so. As such, they are trying to bring in evidence of a crime that is not admissible. They could have gone through the 404(B) hearing with this crime, as they did with the other, but they failed to do so.

26.

It is not admissible. It's not admissible evidence about a crime-- it's about a crime that is not admissible. Thus it is a **Mandatory Mistrial. (emphasis added)**.

The Judge discusses that this adjudication is not admissible and questions him further. The State tells the Judge the only thing he has is the hearsay evidence that "people at the Sheriff's office in St. Bernard Parish" told him about (**See exhibit "C"**). This evidence was presented by the state merely to show a criminal disposition and for its prejudicial effect. The law in this matter is clear, "other crimes evidence is inadmissible unless it has an independent relevancy besides merely showing criminal disposition". *United States v. Young*, 470 U.S. 1,6, 105 S.Ct. 1038,1041, 84 L.Ed.2d 1 (1985); *United States v. Lowden*, 900 F.2d 213, 216-17 (10th Cir. 1990).

The jurisprudence interpreting La.C.Cr.P. Art.771 has held that an impermissible reference to another crime deliberately elicited of a witness by the prosecutor would be imputable to the state and would mandate a mistrial. *Pennsylvania v. Ritchie*, 480 U.S. 39, 59-60, L.Ed.2d 40(1987); *Nettles v. Wainwright*, 677 F.2d 410, 414-15 (5th Cir. 1982)*Collins v. Scully*, 755 F.2d 16, 19(2nd Cir. 1985). Clearly in this case the improper actions of the state in introducing alleged evidence of another Armed Robbery was introduced to the jury for the sole purpose of it's prejudicial value, thus, mandating a mistrial.

The facts are plain on the face of the record, the state presented the jury with inadmissible evidence of an alleged armed robbery. Evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. In order to avoid the unfair inference that a defendant committed a particular crime simply because he is a person of criminal character, other crimes evidence is inadmissible unless it has an independent relevancy beside showing a criminal disposition.

The State intentionally ignored the law by the introduction of this false information, and as such, this is knowing and intentional **Prosecutorial Misconduct** and a knowing and intentional

27.

violation of Petitioner's Constitutional Rights. The intentional acts of the State "Clearly" indicate Prosecutorial Misconduct(*Doyle v. Ohio:*426 U.S.610 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). Petitioner was knowingly and intentionally denied and deprived of substantive and procedural Due Process, Equal Protection, Right to a Fair and Impartial Trial, the Right to Present a Defense, and the Right to Effective Assistance of Counsel violative of his 5th, 6th, 8th, and 14th Amendment rights under the United States Constitution. Surely this is a denial of **Mr. Lauga's** constitutional right to the Due Process of Law.

Further the Prosecutor went on to tell the Jury in his closing arguments(Rec. Pg. 479), "**This is the only armed robbery I ever tried where I proved that three or four months before the robbery, the defendant actually had in his possession a gun described by everybody in every armed robbery. Most armed robbers, you can't prove they had a gun. In this case, we proved he had the gun**"( See exhibit "D")**.** Further, Prosecutor Noriea goes on to say, " **Of course, he told you he took it to Harry's pawn shop and got $130 for it. That means he didn't do the crime. It's in his car three days after he is arrested.**(Court Record Pg. 479.) This is yet another example of false evidence as the gun was in **Mr. Lauga's** car after he was arrested in the Orleans case, the State only had a picture of the gun **Mr. Lauga** sold to Cash America Pawn Shop; 8801 West Judge Perez Drive, Chalmette, La. 70043, on October 1, 2008, four months prior to the crime for which **Mr. Lauga** stands accused of committing. (State Record. Pg. 403).

The Prosecutor is an Attorney at Law and an Officer of the Twenty-Second Judicial District Court and is presumed to know the law, and as an Officer of the Court, has a sworn duty to act in accordance with, and uphold the laws of the State of Louisiana, and the Constitution of the United States. The Prosecutor also has a sworn duty to act in accordance with the Rules of Professional Conduct set forth by the Louisiana Bar Association, and in this case he utterly and intentionally failed

28.

to do so mandating reversal of Petitioner's conviction and sentence. ( *Maxwell v. Roe*, 628 F.3d 486(9th Cir. 2010).

"It is undeniable that the misconduct, actions and/or inactions presented herein were a denial of substantive and procedural Due Process resulting in the denial of Petitioner's right to a fair trial". *Kutzner v. Johnson*, 242 F.3d 605, 609(5th Cir. 2001); *United States v. Bagley*, 473 U.S. 667,676,105 S.Ct. 3375, 87 L.Ed.2d 481(1985) *Greer v. Miller*, 483 U.S. 756,765,107 S.Ct. 3102, 97 L.Ed.2d 618(1987)(quoting *Donnelly v. Dechristophoro*; supra.

Mr. Lauga was denied the Due Process of the law as demanded by the United States Constitution, which rights are guarded and vested in the **Fifth and Fourteenth Amendments. Mr. Lauga** was clearly prejudiced and as such should be granted a new trial.

## CLAIM NUMBER 3.

**DID THE IMPROPER ADMISSION OF OTHER CRIMES EVIDENCE PREJUDICE MR. LAUGA AND DENY HIM OF HIS CONSTITUTIONAL RIGHT TO THE DUE PROCESS OF LAW AND A FAIR TRIAL GUARANTEED BY THE UNITED STATES CONSTITUTION SIXTH AND FOURTEENTH AMENDMENTS, FEDERAL RULE 404, AND THE LOUISIANA CONSTITUTION ARTICLE 1§ 16?**

### LAW AND ARGUMENT

Prior to the trial, the trial court held a hearing under the provisions of *Prieur*. The hearing was conducted based upon the request of the State to admit evidence of a previous Armed Robbery which Mr. Lauga was alleged to have committed in Orleans Parish.

Yet, during the trial the State introduced alleged evidence of another crime, in St. Bernard Parish, that was inadmissible. On Record Page 432, the following exchange took place during the State's cross-examination of **Mr. Lauga;**

Q:   Have you ever been in trouble before?

A:   Arrest-wise or ever convicted?

Q:   In St. Bernard Parish?

DEFENSE:   Object to that as irrelevant.

COURT: Sustained.

Q:   You ever had a conviction in St. Bernard as a juvenile?

A:   No sir, do not.

Q:   You were never adjudicated a juvenile delinquent?

A:   No sir, I was not.

**Q:   For Armed Robbery, you were never..... (emphasis** added)

At this time the defense adamantly objected to the severe prejudicial nature of this line of questioning and sought a mistrial. Notwithstanding the failure to conduct a *Prieur* hearing into this matter, the other crimes evidence of an alleged armed robbery, that was dismissed, was clearly inadmissible and extremely prejudicial to **Mr. Lauga**. **Mr. Lauga** further argues that the State knew, or should have known, this evidence was false, clearly in violation of *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217(1959).

The fundamental rule in Louisiana governing the use of evidence of other crimes, wrongs, or acts is, and has been, such evidence is not admissible to prove the accused committed the charged crime because he has committed other such crimes in the past or to show the probability he committed the crime in question because he is a man of criminal character. *Huddleston v. United States*, 485 U.S. 681, 690. 108 S.Ct. 1496, 1501-1502, 99 L.Ed.2d 771(1998); *State v. Scales*,93-2003,p.4-5(La 5/22/95) 655 So.2d 1326,1330-31, Cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed. 2D 670 1996. It is well established that evidence of other crimes, wrongs, or acts may not be used to prove the accused is a person of criminal character, evidence of other crimes has long been admissible if the State establishes an independent and relevant reason for its admission. The "independent and relevant reason" for the introduction of the alleged St. Bernard robbery was strictly for the prejudicial affect because **Mr. Lauga** was never convicted of any robbery in St. Bernard Parish...

30.

La. Code of Evidence at **Article 404(B)(1)**, adopted from the **Federal Rule 404**, which provides, in pertinent part:

> Except as provides in Article 412, evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation,plan, knowledge, identity, absence of mistake or accident, provided reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part the act or transaction that is subject of the present proceeding.

Foremost, at least one of the enumerated purposes in **Art. 404(B)(1)** must have substantial relevance independent from showing defendant's general criminal character in that it tends to prove a material fact genuinely at issue. The introduction of an alleged prior armed robbery had no substantial relevance independent from showing defendant's general criminal character as an armed robber. Several other statutory and jurisprudential rules also govern the admissibility of other crimes evidence even when one or more of these permitted purposes is asserted. *Huddleston v. United States*, 485 U.S. 681, 690-691, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771(1988). This action by the State prejudiced **Mr. Lauga** beyond the possibility of a fair trial.

Mistrial was required where the State sought information on cross-examination for impeachment purposes about defendant's prior charged offense which had not resulted in a conviction and these comments were made in the presence of the Jury. See *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182(1993). The La. Code of Criminal Procedure, Article 609.1, allows only for the introduction of convictions. **Mr. Lauga** has attached to this filing a copy of the St. Bernard Parish record that clearly shows this charge was dismissed. This mandates a mistrial due to the improper actions of the State by the introduction of this prejudicial evidence.

The courts have held that the probative value of the extraneous crimes evidence must outweigh its prejudicial effect. *Breakiron v. Horn*, 642 F.3d 126, 133(3rd Cir. 2009). Prejudicial effects limit the introduction of probative evidence of prior misconduct when it is unduly and unfairly prejudicial. See

31.

*Wilson v. Beard*, 589 F.3d 651, 665 (3rd Cir. 2009); *United States v. Agurs*, 427 U.S. 97, 113 96 S.Ct. 2392, 49 L.Ed.2d. 342 (1976); and *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574(1937). Clearly in the instant matter, **Mr. Lauga** has been prejudiced and this prejudice far outweighs any probative value.

It is clear that the State's introduction of the alleged St. Bernard conviction for armed robbery was false and had no independent relevancy to the instant offense. This false evidence was simply introduced to show a criminal disposition. See *United States v. Gayansky*, 291 F.3d 1245 1248-50 (10th Cir. 2002).

The prosecutions introduction of this false evidence that he knew, or should have known to be false, clearly violated the **DUE PROCESS CLAUSES** of both the Louisiana and United States Constitutions. It further violates the United States Supreme Court decision in *Napue v. Illinois, supra; United States v. Agurs, supra*

Clearly the introduction of these known false and improper allegations, and the trial court's refusal to grant a mistrial was in fact prejudicial and not harmless beyond a reasonable doubt, mandating that the conviction be reversed and remanded for a new trial.

### CLAIM NUMBER 4.

DID THE TRIAL COURT ERR IN DENYING MR. LAUGA'S MOTION FOR MISTRIAL AFTER THE STATE QUESTIONED MR. LAUGA AS TO A JUVENILE ADJUDICATION ?

During the testimony of **Mr. Lauga**, the State improperly introduced hearsay evidence of an alleged **juvenile adjudication** for armed robbery in St. Bernard Parish. The introduction of this evidence was inadmissible and mandated a mistrial under **Fed. Rule 404**. When the Court asked the State what evidence they had as to this inadmissible alleged armed robbery, the State replied;

STATE:      The only thing I have is that he was convicted of armed robbery in 1993. And that came from one of the people at the Sheriff's office in St. Bernard Parish.

32.

JUDGE:        So you don't have anything.

STATE:        I don't have anything showing one way or the other what it was.

Clearly the introduction of this hearsay evidence of alleged crime of armed robbery during the cross examination was prejudicial to the defense. **Mr. Lauga** argues that the State knew, or should have known, this evidence was false, clearly in violation of the holdings of *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). A simple investigation by trial counsel would have revealed that the conviction alleged by the State never happened. **Mr. Lauga** was able to obtain the proof that this alleged prior armed robbery conviction never happened through a simple records request and has attached a copy of the documentation. The introduction of this false hearsay evidence of another armed robbery, to the jury, was fatal to the defense and required a mistrial. Surely the probability of prejudice in the improper admission of this false evidence of other *alleged* crimes raises a probability sufficient to undermine confidence in the outcome. The Honorable Judge William Crain stated ( **record pgs. 450-51**) "There was never any mention made of what that crime was or may have been. So there's nothing in the jury's mind, if anything, about this. And that's the way it stands with the jury. There's no reference to the type of crime or anything."( **See exhibit "E"**) Clearly this is erroneous by what was said on the record and submitted as (**exhibit "B"**).

The defense attorney did adamantly object to the admission of this alleged evidence. The Court sustained the objection and the defense attorney motioned the court for leave to file writs. The Court denied the motion for leave. Defense counsel continued with objections. Even though the court denied the motion for leave, this denial does not overcome the defense counsels complete failure to seek writs where the First Circuit Court of Appeal would have followed the law and granted a mistrial. Counsel's failure to seek writs failed to subject the State's case to an adversarial testing and therefore denied **Mr. Lauga** of a fair trial. This error demands that the conviction and sentence of **Mr. Lauga** be vacated and set aside and a new trial date be set with effective counsel to assist **Mr. Lauga** obtain a fair trial.

## CLAIM NUMBER 5

## DID THE COURT ERR IN DENYING MR. LAUGA AN EVIDENTIARY HEARING TO SUBSTANTIATE HIS CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL ON INITIAL COLLATERAL REVIEW?

## LAW AND ARGUMENT

The United States Supreme Court, in *Martinez v. Ryan*, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), held that: (1) inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel at trial; (2) Anti-Terrorism and Effective Death Penalty Act (AEDPA) did not bar Petitioner from using ineffectiveness of his post-conviction attorney to establish "cause" for his procedural default; and, (3) remand was required to determine whether Petitioner's attorney in his first State collateral proceeding was ineffective, whether underlying ineffective assistance of trial counsel claim was substantial, and whether Petitioner was prejudiced.

The court modified the *Coleman v. Thompson* standard in *Martinez v. Ryan*, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012).

Stanley Lindsey a Louisiana Prisoner moved the U.S. 5ᵗʰ Circuit for a certificate of appealability (COA) to appeal the denial of his 28 USC § 2254 application. He raised an ineffective assistance of counsel claim. To obtain a COA a prisoner must make a "substantial showing of the denial of a constitutional right." 28 USC § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000). When the Federal district court has denied federal relief on procedural grounds, the applicant must demonstrate that reasonableness jurist would find it debatable whether the § 2254 applicant states a valid claim of the denial of a constitutional right and whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484. An applicant satisfies the COA standard "by demonstrating that jurist of reasonableness could disagree with the district court's resolution of his constitutional claims or that jurist could conclude the issues presented are adequate to deserve encouragement to

proceed further." *Miller-El v. Cockrell*, 573 U.S. 322, 327(2003). In a recent ruling, the United States

Supreme Court addressed the standard for overcoming procedurally defaulted ineffective assistance

claims. See *Martinez v. Ryan*, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012); When a State, like

Louisiana, requires that a prisoner raise an ineffective assistance of counsel claim on collateral review,

a prisoner can demonstrate cause for the default in two circumstances: (1) "Where the State Courts did

not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at

trial." (2) "where appointed counsel in the initial-review collateral proceeding, where the claim should

have been raised, was ineffective under the standard of *Strickland v. Washington*, 466 U.S. 668 (1984).

Further, the prisoner must also show that the "underlying ineffective assistance of trial counsel is a

substantial one, which is to say that the prisoner must demonstrate that the claims has some merit.In

*Ibarra v. Thaler*, No. 11-70031 (5ᵗʰ Cir. 6/28/12), the Fifth Circuit held that: "As the majority states,

*Martinez*, recognizes a limited exception to *Coleman v. Thompson*, supra. "Specifically, in *Martinez*,

the Court said:

"To protect prisoner's with a potentially legitimate claim of ineffective assistance of trial counsel, it
is necessary to modify the unqualified statement in *Coleman* that an attorney's ignorance or
inadvertence in a post-conviction proceeding does not qualify as cause to excuse a procedural
default. This opinion qualifies *Coleman* by recognizing a narrow exception: Inadequate assistance
of counsel on initial-review collateral proceedings may establish cause for a prisoner's procedural
default of a claim of ineffective assistance at trial."

Surely, had **Mr. Lauga** been given competent legal assistance on initial collateral review of his

Post-Conviction Application the presiding Judge would have been made aware of the legal

ramifications of the Prosecutor introducing false and misleading statements to the jury that were the

very core of the States case.Had the district court given **Mr. Lauga** effective legal assistance during the

initial collateral review the presiding Judge would have then known that he made an erroneous decision

when he said, "This Court is unconvinced that the documentation **Mr. Lauga** provided this Court is in

fact the same charge that the Assistant District Attorney made reference to at trial."**(See exhibit "A").**

As such **Mr. Lauga** would request that this court remand this matter for a full evidentiary hearing with the aid of qualified legal assistance that is conflict free of the Indigent Defender's Office of St.Tammany Parish.

### CLAIM 6.

#### WAS THE SENTENCE CONSTITUTIONALLY EXCESSIVE?
#### LAW AND ARGUMENT

**Mr. Lauga** was sentenced to sixty-five years at hard labor without benefit of parole, probation or suspension of sentence. **Mr. Lauga** is a thirty-five year old man with no prior felony convictions. By imposing the lengthy sentence of sixty-five years in this case, the trial court imposed a constitutionally excessive sentence.

The sentencing exposure for a armed robbery is ten to ninety-nine years at hard labor without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64. **Mr. Lauga** received close to the maximum sentence in this case.

Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. The **EIGHTH** Amendment to the Constitution of the United States provides that no law shall subject any person to excessive punishment. In upholding this mandate, the Louisiana Supreme Court has decreed that although a sentence is within statutory limits, it can be reviewed for constitutional expressiveness *Weems v. United States*, 30 S.Ct. 544. In giving guidance to a review for expressiveness, the Louisiana Supreme Court has explained that when a sentence imposes punishment which is grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering, it is unconstitutionally excessive. *State v. Bonanno*, 384 So.2d 355(La. 1980); *State v. Smith*, 2001-2574 (La. 01/14/03), 839 So.2d 1(La., 2003).

A sentence is considered grossly disproportionate when the crime and punishment, considered in light of the harm done to society, shocks the sense of justice. *State v. Hogan*, 480 So.2d 288 (La

36.

1985); *State v. Thompson*, 25, 583 (La.App.2nd Cir. 1/19/94), 631 So.2d 555. As a general rule, maximum sentences are appropriate only in cases involving the most serious violation of the offense and the worst type of offender. *State v. Freelon*, 26,938(La. App.2nd Cir.5/10/95), 655 So.2d 687. However, a trial court has wide discretion to sentence within the statutory limits and absent a showing of manifest abuse of discretion,we do not set aside a sentence as excessive. *State v. Thompson, supra.*

The sentencing guidelines are among the factors to be considered in this case by the trial Judge in his determination as to what would be a fair and just sentence (I) in proportion to the severity of the crime, (ii) in light of this particular defendant, and (iii) keeping in mind that the maximum sentences should be reserved for the most egregious defendant's. *Brogdon v. Louisiana*, 105 S.Ct. 2345 85 L.Ed.2d 862.


A sentence must be based on the circumstances of the instant case (including the seriousness of the offense, or whether there was any violence), the background of the defendant(including his age, family ties, marital status, health, employment record, any problems such as mental illness, drug addiction, or retardation), the proportionality of the sentence to the seriousness of the offense, and whether there is any societal purpose and need to the infliction of pain and suffering on this defendant, and , if so, how much.

This Court should consider the sentence in this case in light of the fact that Mr. Lauga is a first felony offender. Mr. Lauga was a thirty-five year old man who has been given a sentence which will incarcerate him essentially for the remainder of his natural life. All of these circumstances results in the conclusion that the sentence of sixty-five years is constitutionally excessive in this case.

## CONCLUSION

**Mr. Lauga** has made a prima facie case, where he has shown his counsel was clearly ineffective for not doing any sort of pre-trial investigation which would have led to the evidence needed to discredit the Prosecution's false, misleading, and prejudicial allegations while **Mr. Lauga** was being cross-examined by the State. Without any doubt **Mr. Lauga** has shown that his court appointed attorney rendered ineffective assistance according to the two prong standard required by *Strickland*, supra.

**Mr. Lauga** has also shown that he has been denied his constitutional rights to the Due Process of Law and Right to a Fair Trial due to the blatant false statements made by the State and introduced to the Jury as factual evidence.

**Therefore**, the Court, after due consideration, should vacate the conviction and sentence imposed upon **Mr. Lauga** and remand this case for further proceedings. In the alternative, **Mr. Lauga** seeks to have this matter set for evidentiary hearing with the assistance of Conflict Free Counsel.

38.

## PRAYER

It is the prayer of this Petitioner that this Honorable Court grant at the very least a conflict free counsel to assist him in an evidentiary hearing to determine the truthfulness of the allegations contained herein regarding the State's admittance of blatantly false evidence and the fact that his Trial Counsel was ineffective for not investigating any of his claims, that there was in fact hard evidence to discredit the State's theory of the use of a gun that was sold prior to the date of the instant matter. To which the victim after being shown a picture of this gun, twice stated that it was the gun used by **Mr. Lauga**. And that the State knowingly and intentionally withheld that information to obtain a conviction disregarding **Mr. Lauga's Due Process of Law**, and most certainly would have raised "<u>REASONABLE DOUBT</u>" to any trier of fact with a modicum of intelligence.

**Mr. Lauga** also prays that once these facts are brought to light, that this Honorable Court recommend that in the Interest of Justice, all the charges against **Mr. Lauga** be dismissed with the same Prejudice the State Prosecuted **Mr. Lauga**, for a crime which he adamantly denied from the beginning; and has spent six years of his life fighting for the opportunity to prove his innocence while incarcerated in the State Penitentiary. And that the District Attorney's administration that **Mr. Lauga** was convicted under has since been replaced due to Federal Indictments against the District Attorney, and many of the Assistant District Attorney's.

That this Honorable Court look at the Exhibits presented and see that even the Honorable Judge Presiding during trial made an erroneous conclusion in denying **Mr. Lauga's** mistrial when he stated that "**the State hadn't said what the charge was**" when the Prosecutor introduced evidence of the St. Bernard arrest, and that the cummalative affect of all the errors were in fact **not harmless** and denied **Mr. Lauga** a fair trial.

**Mr. Lauga** prays this Honorable Court grant him relief.

Respectfully Submitted;

*William D. Lauga*

William D. Lauga, 568149
Spruce Unit #2
Louisiana State Penitentiary
Angola, Louisiana 70712

## CERTIFICATE AND VERIFICATION

I, William David Lauga, verify that the foregoing pleading is true and correct to the best of my knowledge and belief, under penalty of perjury.

I further certify that a true and correct copy of the foregoing has this day been served upon the District Attorney in and for the Parish of ST. Tammany, State of Louisiana, by placing a copy of the same in the hands of prison officials for mailing via U.S. Mail, postage pre-paid, on this _23 rd_ day of _November_ , 2015.

_William D. Lauga_

William D. Lauga

40.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
_____ Division

WILLIAM D. LAUGA                              *                    CIVIL ACTION
                                              *
         VERSUS                               *  NO:_____SEC:_____
                                              *
N.BURL CAIN, Warden                           *  MAGISTRATE:_____
Louisiana State Penitentiary                  *
                                              *  JUDGE:_____

## MOTION FOR APPOINTMENT OF COUNSEL

Now into this Honorable Court comes, William D. Lauga, Petitioner. Who Prays that the Court would Appoint him Conflict Free Counsel in the above entitled matter, and offers the following in support.

1.      On August 30, 2013, the Louisiana Supreme Court, under docket number, 2013-KO-0157, denied all errors presented in the Direct Appeal Brief.

2.      Mr. Lauga received notice of this ruling at the Louisiana State Penitentiary on September 4, 2013.

3.      Mr. Lauga's conviction and sentence are final for purposes of statutory requirements.

4.      On September 30, 2013, when it became apparent that he could not afford an attorney to prepare a Writ of Certiorari to the United States Supreme Court, Mr. Lauga began to research and make every effort to learn the law.

5.      Mr. Lauga's primary claims are that of ineffective assistance of counsel and a denial of the Due Process of Law.

6.      Mr. Lauga needs the appointed attorney to access public records in order to prove his claims. Namely, records from Cash American Pawn, 8801 W. Judge Perez Drive, Chalmette; the Affidavit previously submitted by Danielle Lauga; to interview potential witnesses and obtain all records from the Orleans Parish case in which he was alleged to have been involved and other records in support.

Mr. Lauga seeks for this Honorable Court to appoint counsel to assist him in his initial review collateral proceeding in the presentation of his claims of Ineffective Assistance of Counsel which resulted in Mr. Lauga being denied his **Sixth** and **Fourteenth Amendment** Rights.

1.    The issues involved in this case are complex.

2.    The issues involved in this case will require research and investigation which the Petitioner cannot do while confined in prison.

3.    Appellant has a very limited knowledge of the law.

4.    The ends of justice and judicial economy would best be served in this case if an attorney was appointed to represent Appellant.

5.    The United States Supreme Court holding under *Martinez v. Ryan*, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012).

Petition seeks this Honorable Court to appoint counsel to represent his claims of ineffective assistance of counsel in these initial review proceedings.

For the reasons stated herein, and based on the issues contained within Petitioner's filing, this Court should appoint counsel.

Wherefore, Petitioner requests this Court to appoint counsel to represent him throughout the Habeas Petition and any and all Court Proceedings the Court should Grant.

Respectfully Submitted;

William D. Lauga # 568149

476 Fed.Appx. 777, Lindsey v. Cain, (C.A.5 (La.) 2012)

**▶777** 476 Fed.Appx. 777

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007.   See also Fifth Circuit Rules 28.7, 47.5.3, 47.5.4.  (Find CTA5 Rule 28 and Find CTA5 Rule 47)

United States Court of Appeals,
Fifth Circuit.

**Stanley LINDSEY, Plaintiff-Appellant**
**v.**
**Burl CAIN, Warden, Louisiana State**
**Penitentiary, Defendant-Appellee.**

No. 11-30997

Summary Calendar.
April 19, 2012.

Stanley Lindsey, Angola, LA, pro se.

Stacy Lynn Wright, Esq., Assistant District Attorney, District Attorney's Office, Baton Rouge, LA, for Defendant-Appellee.

Appeal from the United States District Court for the Middle District of Louisiana, USDC No. 3:11-CV-59.

Before STEWART, OWEN, and HIGGINSON, Circuit Judges.

PER CURIAM: (FN*)

Stanley Lindsey, Louisiana prisoner # 90359, moves this court for a certificate of appealability (COA) to appeal the denial of his 28 U.S.C. § 2254 application, wherein he sought to challenge his conviction for armed robbery and the life sentence imposed following his adjudication as an habitual offender. Lindsey argues that the trial court erred when it determined that his claims regarding the sufficiency of the evidence, the prosecutor's improper remarks during closing arguments, counsel's failure to appeal the denial of the motion to suppress, counsel's failure to object to the prosecutor's improper remarks during closing arguments, and the constitutionality of the habitual offender adjudication were all procedurally barred. He also argues that the district court erred by determining that his remaining ineffective assistance of counsel claims and his claim regarding the State's withholding of exculpatory evidence were without merit.

To obtain a COA, a prisoner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2);  *Slack v. McDaniel,* 529 U.S. **▶778**. 473, 483-84, 120 S.Ct. 1595, 146

L.Ed.2d 542 (2000) To view preceding link please click here .  When the district court has denied federal habeas relief on procedural grounds, the applicant must demonstrate that reasonable jurists would find it debatable whether the § 2254 application states a valid claim of the denial of a constitutional right and whether the district court was correct in its procedural ruling. *Slack,* 529 U.S. at 484, 120 S.Ct. 1595.  An applicant satisfies the COA standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).  Lindsey has not made the requisite showing regarding his procedurally defaulted claims concerning the sufficiency of the evidence, the prosecutor's improper remarks during closing arguments, and the constitutionality of the habitual offender adjudication. Likewise he has not made the requisite showing on the merits of his ineffective assistance of counsel claims, and his claim regarding the State's withholding of exculpatory evidence. Consequently, his motion for a COA is denied as to those claims.

The Supreme Court recently addressed the standard for overcoming procedurally defaulted ineffective assistance of counsel claims. *See Martinez v. Ryan,* --- U.S. ----, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012). When a state, like Louisiana, requires that a prisoner raise an ineffective assistance of counsel claim on collateral review, a prisoner can demonstrate cause for the default in two circumstances: (1) "where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial" and (2) "where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland* [*v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ]." *Id.* at 1318 (citation omitted). Further, the prisoner must also show that "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. *Cf. Miller-El v. Cockrell* (describing standards for certificates of appealability to issue)." *Id.* (internal citations omitted).

Accordingly, a COA is granted on the dismissal of Lindsey's ineffective assistance of counsel claims that were procedurally defaulted;  the judgment is vacated as to those claims;  and the matter remanded for further proceedings in light of *Martinez.  See Whitehead v. Johnson,* 157 F.3d 384, 388 (5th Cir.1998).

COA DENIED in part;  COA GRANTED in part and VACATED and REMANDED.

(FN*) Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

© 2014 Thomson Reuters. No claim to original U.S. Govt. works.