UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


WILLIAM DAVID LAUGA                                                    CIVIL ACTION

VERSUS                                                                        NO. 15-6298

N. BURL CAIN, WARDEN, LSP                                      SECTION: "G"(1)


<u>REPORT AND RECOMMENDATION</u>

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  <u>See</u> 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, William David Lauga, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.  On April 28, 2010, he was convicted of armed robbery under Louisiana law.[1]  On August 16, 2010, he was sentenced to a term of sixty-five years imprisonment without benefit of probation, parole, or suspension of sentence.[2]  On June 10, 2011, the Louisiana

---

[1] State Rec., Vol. 3 of 8, trial transcript, p. 489; State Rec., Vol. 1 of 8, minute entry dated April 28, 2010; State Rec., Vol. 1 of 8, jury verdict form.
[2] State Rec., Vol. 3 of 8, transcript of August 16, 2010; State Rec., Vol. 1 of 8, minute entry dated August 16, 2010.

First Circuit Court of Appeal affirmed his conviction, vacated his sentence, and remanded the matter for resentencing.[3]

On December 15, 2011, the state district court resentenced petitioner to a term of sixty-five years imprisonment without benefit of probation, parole, or suspension of sentence.[4]  Petitioner then again appealed, and the Louisiana First Circuit Court of Appeal affirmed his conviction and sentence on December 21, 2012,[5] and the Louisiana Supreme Court denied his related writ application on August 30, 2013.[6]

On or about June 23, 2014, petitioner filed an application for post-conviction relief with the state district court.[7]  That application was denied on July 16, 2014.[8]  His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal on October 23, 2014,[9] and by the Louisiana Supreme Court on September 25, 2015.[10]

On or about November 23, 2015, petitioner filed the instant federal application seeking habeas corpus relief.[11]  The state filed a response conceding that the application is timely but arguing that petitioner's claims have no merit,[12] and petitioner filed a reply to the state's response.[13]  Petitioner has also filed two motions for discovery,[14] both of which are being separately denied this date.

---

[3] State v. Lauga, No. 2010 KA 2209, 2011 WL 3480949 (La. App. 1st Cir. June 10, 2011); State Rec., Vol. 4 of 8.
[4] State Rec., Vol. 4 of 8, transcript of December 15, 2011; State Rec., Vol. 4 of 8, minute entry dated December 15, 2011.
[5] State v. Lauga, No. 2012 KA 0842, 2012 WL 6681850 (La. App. 1st Cir. Dec. 21, 2012); State Rec., Vol. 5 of 8.
[6] State v. Lauga, 120 So.3d 258 (La. 2013); State Rec., Vol. 5 of 8.
[7] State Rec., Vol. 6 of 8.
[8] State Rec., Vol. 7 of 8, Order dated July 16, 2014.
[9] State v. Lauga, No. 2014 KW 1203 (La. App. 1st Cir. Oct. 23, 2014); State Rec., Vol. 7 of 8.
[10] State ex rel. Lauga v. State, 178 So.3d 161 (La. 2015); State Rec., Vol. 8 of 8.
[11] Rec. Doc. 1.
[12] Rec. Doc. 12.
[13] Rec. Doc. 13.
[14] Rec. Docs. 11 and 16.

## Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell,

535 U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.  As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein.  White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

**Facts**

In the second direct appeal, the Louisiana First Circuit Court of Appeal summarized the

facts of this case as follows:

> On January 25, 2009, Joseph Brooks was working as a bartender at
> Tooloula's in St. Tammany Parish.  At approximately 1:30 a.m., as Brooks was
> cleaning and preparing for closing, a male patron entered.  The patron, who was
> clad in a navy blue jacket with a name tag and a U.S. Marshal patch on the sleeve,
> sat at the bar and engaged in conversation with Brooks.  According to Brooks, the
> man stated he was a U.S. Marshal with the New Orleans Division and indicated he
> was investigating an armed robbery.  He provided a description of the alleged
> suspect.  Brooks advised that he had not seen anyone matching the description and
> proceeded to discuss a recent patron whom he considered suspicious.
>
> After conversing with Brooks for a while, the man left the bar area and went
> to the restroom.  Brooks continued cleaning.  The man later exited the restroom and
> returned to the bar area.  He and Brooks engaged in further conversation.  At some
> point, the man told Brooks he needed to retrieve some paperwork from his vehicle.
> When he returned, he and Brooks continued to talk about the suspicious patron.
> Approximately ten minutes later, the man pulled out a gun and held it to Brooks's
> neck.  Brooks pushed the perpetrator away from him and ran out the front door.
> Outside, the perpetrator threatened to "blow [Brooks's] f-ing head off," grabbed
> Brooks by his shirt, and threw him onto the ground.  He then pointed the gun at
> Brooks and instructed him to get up and "don't [do] nothing [sic] stupid."  Brooks
> stood up and ran away.  The perpetrator chased Brooks, threatening to shoot him
> and demanding money.
>
> Eventually, the perpetrator discontinued the pursuit and returned to the bar.
> Once Brooks realized that he was no longer being chased, he used his cell phone to
> contact the police.  Brooks watched as the perpetrator exited the bar and ran north
> through the parking lot into an apartment complex.  Meanwhile, Deputy Sean
> Beavers of the St. Tammany Parish Sheriff's Office arrived on the scene.  Brooks
> returned to the bar, advised Deputy Beavers of what occurred, and provided a
> physical description of the perpetrator.  Brooks also observed that the money that
> had been in his tip jar (three $1 bills and a few quarters) was gone.
>
> On February 16, 2009, Brooks identified the defendant, from a six-person
> photographic lineup, as the individual who pretended to be a U.S. Marshal and
> eventually robbed him at gunpoint on the night in question.  Brooks also identified
> the defendant as the perpetrator of the robbery in open court during the trial.  Brooks
> testified that he got a good look at the defendant, whom he believed to be a marshal,
> for approximately twenty-five minutes.  Brooks emphasized that there was no doubt
> in his mind that the defendant was the person who had robbed him.
>
> At the defendant's trial, Elissa Lee testified regarding an evening she and
> her friend, Amanda Smith, spent in the company of the defendant and an individual

6

named "Jeremy" at Mudbugs in Slidell.  Lee testified that, at some point during the encounter, which lasted approximately three hours, the defendant pulled out a badge and stated that he was a U.S. Marshal.  The defendant told Lee and Smith that they were under arrest and requested that the women leave the bar with Jeremy and him.  The women refused.  However, they continued to "hang out" with the men inside of Mudbugs.  According to Lee, the defendant was wearing a "law enforcement hat."  Approximately two weeks later, Lee identified the defendant from a photographic lineup as the purported U.S. Marshal she conversed with at Mudbugs.  Lee also identified the defendant in open court at the defendant's trial.

The defendant testified on his own behalf at the trial.  He denied committing the armed robbery at issue and presented a defense of misidentification.  He claimed he was asleep at a friend's house when the offense occurred.  Regarding Lee's testimony, the defendant admitted that he met Lee and Smith at Mudbugs approximately five days after the date of the robbery in this case.  However, he denied ever showing the women a badge or claiming to be a U.S. Marshal.

In addition to introducing evidence regarding the Tooloula's robbery, pursuant to La. Code Evid. art. 404(B), the State introduced evidence that the defendant was involved in another, unrelated, armed robbery that occurred in Orleans Parish.  The defendant was never prosecuted for that crime.  At the trial of the instant matter, Rebecca Gilbert testified that on June 2, 2008, she was working as a cashier at Paradise Casino in Orleans Parish.  At some time between 1:30 to 2:30 a.m., the defendant entered the casino, held a gun to the head of the security guard, and threatened to kill him.  The defendant then escorted the guard over to the cashier station at gunpoint and demanded that Gilbert give him money.  She filled a bag the defendant handed her with approximately $15,000 in cash.  The defendant instructed Gilbert and the security guard to lie down on the floor.  Once they complied, he fled.

Gilbert testified the defendant was wearing a black cap, black clothing and black face paint.  She identified him in a pretrial photographic lineup as the robber. However, she explained she later refused to cooperate with the investigation of the case because she feared for her life.  The charge against the defendant for the Orleans Parish robbery was not pursued by the district attorney.[FN1]  Gilbert identified the defendant in open court at the instant trial as the individual who robbed her.  She explained that although she still feared for her life, she was willing to testify at the instant trial because she felt that her failure to cooperate with the Orleans Parish robbery investigation resulted in someone else being "victimized."

[FN1]  The security guard was never able to positively identify the perpetrator.

Detective Gregory Powell, of the New Orleans Police Department, testified that he reviewed the video surveillance footage from Paradise Casino in connection with his investigation of the armed robbery in Orleans Parish.  According to him, the defendant was observed wearing a hat with the letters "SWAT" on it, a large

7

black coat, and some blue or purple gloves on his hands, and he left the casino in a white Ford Expedition.  Detective Powell later determined that the defendant owned a white Ford Expedition.  When Detective Powell compiled a photographic lineup and presented it to Gilbert, she positively identified the defendant as the person who committed the robbery.[15]

### Petitioner's Claims[16]

### "Other Crimes" Evidence

Petitioner claims that his rights were violated by the state's introduction of evidence concerning other crimes he was alleged to have committed.  In the first direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> In his pro se assignment of error, the defendant contends the trial court erred and/or abused its discretion in permitting the State to introduce evidence of another armed robbery offense wherein the defendant was charged, but never convicted. The defendant asserts the evidence of this unrelated offense was not relevant and was used only to depict him as a person of poor character.
>
> It is well settled that courts may not admit evidence of other crimes to show the defendant as a man of bad character who has acted in conformity with his bad character.  La. C.E. art. 404(B)(1); see State v. Williams, 96-1023, p. 30 (La. 1/21/98), 708 So.2d 703, 725, cert. denied, 525 U.S. 838, 119 S.Ct. 99, 142 L.Ed.2d 79 (1998); State v. Prieur, 277 So.2d 126, 128 (La. 1973).  Evidence of other crimes, wrongs or acts committed by the defendant is generally inadmissible because of the "substantial risk of grave prejudice to a defendant."  Prieur, 277 So.2d at 128. However, the State may introduce evidence of other crimes, wrongs or acts if it establishes an independent and relevant reason such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  La. C.E. art. 404(B)(1).  The Louisiana Supreme Court has also held other crimes evidence admissible as proof of other crimes exhibiting almost identical modus operandi or system, committed in close proximity in time and place.  The other crimes evidence must tend to prove a material fact genuinely at issue, and the probative value of the extraneous crimes evidence must outweigh its prejudicial effect.  State v. Millien, 2002-1006, p. 10 (La.App. 1st Cir. 2/14/03), 845 So.2d 506, 513-14.  The State bears the burden of proving that the defendant committed the other crimes, wrongs or acts.  State v. Galliano, 2002-2849, p. 2 (La.1/10/03), 839 So.2d 932, 933 (per curiam).[FN2]

---

[15] State v. Lauga, No. 2012 KA 0842, 2012 WL 6681850, at *1-3 (La. App. 1st Cir. Dec. 21, 2012); State Rec., Vol. 5 of 8.

[16] For ease of analysis, petitioner's claims are addressed herein in a different order than they are listed in his federal application; however, all claims are addressed.

[FN2]  Under <u>Prieur</u>, the State had to prove by clear and convincing evidence that the defendant committed the other crimes.  <u>Prieur</u>, 277 So.2d at 129.  However, 1994 La. Acts 3d Ex.Sess., No. 51 added La. C.E. art. 1104, which provides that the burden of proof in pretrial <u>Prieur</u> hearings, "shall be identical to the burden of proof required by Federal Rules of Evidence Article IV, Rule 404."  The burden of proof required by Federal Rules of Evidence Article IV, Rule 404, is satisfied upon a showing of sufficient evidence to support a finding by the jury that the defendant committed the other crime, wrong, or act.  The Louisiana Supreme Court has yet to address the issue of the burden of proof required for the admission of other crimes evidence in light of the repeal of La. C.E. art. 1103 and the addition of La. C.E. art. 1104.  However, numerous Louisiana appellate courts, including this court, have held that burden of proof to now be less than "clear and convincing."  <u>Millien</u>, 2002-1006 at p. 11, 845 So.2d at 514.  In this appeal, the defendant does not argue that the State failed to meet its burden of proving that he committed the other crime.

If the prosecution is using other crimes evidence to show "identity," the law requires that facts of cases be so peculiarly distinctive that one must logically say they are works of the same person, but if the State wishes to use such evidence to show defendant's "intent," the standard is lower, and the State must only show that crimes are similar.  <u>State v. Langley</u>, 95-2029, p. 4 (La.App. 4th Cir. 9/4/96), 680 So.2d 717, 721, <u>writ denied</u>, 96-2357 (La. 2/7/97), 688 So.2d 498.  "System evidence" has relevance independent of defendant's criminal propensity and is admissible if it meets other requirements for the admission of other crimes evidence, where defendant's identity as the perpetrator of the charged offense will be genuinely at issue at trial.  <u>State v. Ester</u>, 436 So.2d 543, 546 (La. 1983).  Where testimony shows that factual circumstances of prior acts and the crime charged are virtually identical, evidence of other crimes is corroborative of the victim's testimony and establishes a system or plan.  <u>State v. Lewis</u>, 95-0769, p. 5 (La.App. 4th Cir. 1/10/97), 687 So.2d 1056, 1059, <u>writ denied</u>, 97-0328 (La. 6/30/97), 696 So.2d 1004.

In <u>State v. Bell</u>, 99-3278, pp. 4-8 (La. 12/8/00), 776 So.2d 418, 421-423, the supreme court found that while there were some similarities between the two crimes, the prior crime was not "so distinctively similar to the charged crime (especially in time, place and manner of commission) that one may reasonably infer that the same person was the perpetrator."  Bell was charged with armed robbery, and the State sought to introduce evidence of another robbery.  The supreme court found that there were many differences between the two robberies, including the race of the perpetrators and the type of weapons used, and that the identity exception to inadmissibility must be limited to cases in which the crimes are

genuinely distinctive. The crimes involved robberies of bars at night and occurred within two months of one another in Ascension Parish. The perpetrators in both cases were described as wearing dark hooded sweatshirts or starter jackets. During both robberies, the perpetrators disengaged the telephone at the scene. The only evidence directly connecting the defendant to the crime was the testimony of two co-perpetrators who were charged with participation in the robbery, but had not yet been tried. The supreme court found that the sufficiency of the evidence presented by the co-perpetrators easily would be upheld, if the prosecutor had not introduced inadmissible evidence for the purpose of influencing the jury's determination of the defendant's guilt and then emphasized in argument the role of that evidence in the guilt determination. The court found that it could not conclude with any confidence that the jury's guilty verdict was surely unattributable to the erroneous admission of evidence of a prior armed robbery committed by the defendant, especially since the prosecutor exploited the inadmissible evidence in rebuttal closing argument. The supreme court found that this court concluded correctly that the other crimes evidence was erroneously admitted. A harmless error analysis was conducted, the conviction was reversed, and the case was remanded for a new trial.[FN3] Bell, 99-3278 at pp. 4-8, 776 So .2d at 421-423.

> [FN3] The Louisiana Supreme Court concluded that erroneous admission of other crimes evidence is subject to harmless error analysis under the standard set forth in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The Chapman standard was later refined in Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993). The United States Supreme Court stated that the inquiry was not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error. The Bell court found that when the trial court erroneously allows inadmissible evidence, the prosecutor has a very heavy burden to demonstrate in the appellate court that the error was harmless beyond a reasonable doubt. Bell, 99-3278 at p. 5, 776 So.2d at 422.

Ultimately, questions regarding the admissibility of evidence are within the discretion of the trial court and should not be disturbed absent a clear abuse of that discretion. See State v. Schleve, 99-3019, p. 15 (La.App. 1st Cir. 12/20/00), 775 So.2d 1187, 1199, writs denied, 2001-0210 (La. 12/14/01), 803 So.2d 983 & 2001-0115 (La. 12/14/01), 804 So.2d 647, cert. denied, 537 U.S. 854, 123 S.Ct. 211, 154 L.Ed.2d 88 (2002).

Prior to trial, the State gave notice of its intent to introduce evidence of an unrelated armed robbery that occurred in Orleans Parish on June 2, 2008. At the hearing on the motion, the State argued that the evidence of this armed robbery was admissible under the provisions of La. C.E. art. 404(B)(1) as proof of identity. The

trial court agreed to allow the State to introduce evidence of the other robbery at the defendant's trial. On appeal, the defendant does not argue that the State failed to meet its burden of proving that he committed the Orleans Parish armed robbery offense. Instead, he argues the offenses are not so similar as to make the evidence of the other offense admissible.

In allowing evidence of the Orleans Parish robbery, the trial court noted that because the accuracy of the victim's identification of the defendant as the robber was placed into question by the defense, the other crimes evidence would be relevant to establish that issue. The court noted:

> What I have in this case are two armed robberies. The armed robbery that was involved in the subject case involves a perpetrator who was, who according to testimony, was identified by the victim out of a six pack line-up.
>
> The perpetrator in this case committed the armed robbery with a gun, pistol, held to the victim's neck. The perpetrator in this case also represented himself to be a U.S. Marshal prior to the commission of the armed robbery, who was looking for an armed robber.
>
> In the evidence that I have been presented on the New Orleans crime, the defendant, Mr. Lauga, was also identified from a six pack line-up as the perpetrator of that crime. It, too, was an armed robbery committed with a gun.
>
> According to the video that was reviewed by the detective involved, investigating the New Orleans crime, the defendant wore a hat that had SWAT, S-W-A-T, a law enforcement form.
>
> The thing that is, the two things that are most similar about this case is that both of them were committed with a weapon. And in both cases, this defendant was identified from a six pack line-up as being the perpetrator of the crimes.
>
> Ms. Gilbert testified that the reason that she didn't go forward and was unwilling to cooperate in New Orleans was her fear. And that at this time, her conscience has dictated that she come forward. She also identified the defendant here in the courtroom as the perpetrator of that crime.

The trial court weighed the prejudicial nature of the other crimes evidence against its probative value and concluded that the evidence met the balancing test of La. C.E. art. 403.

At trial of this matter, Rebecca Gilbert testified, on June 2, 2008, she was working as a cashier at Paradise Casino in Orleans Parish. At sometime between 1:30 to 2:30 a.m., the defendant entered the casino, held a gun to the head of the security guard, and threatened to kill him. The defendant then escorted the guard over to the cashier station at gunpoint and demanded that Ms. Gilbert give him

money.  Ms. Gilbert filled a bag the defendant handed her with approximately $15,000.00 in cash.  The defendant instructed Ms. Gilbert and the security guard to lie down on the floor.  Once they complied, the defendant fled.

Ms. Gilbert testified the defendant was wearing a black cap, black clothing and black face paint.  Ms. Gilbert identified the defendant in a pretrial photographic line-up as the robber.   However, Ms. Gilbert explained she later refused to cooperate with the investigation of the case because she feared for her life.  The charge against the defendant for the Orleans Parish robbery was not pursued by the district attorney.[FN4]  Ms. Gilbert identified the defendant in open court at the instant trial as the individual who robbed her.  She explained that although she still feared for her life, she was willing to testify at the instant trial because she felt that her failure to cooperate with the Orleans Parish robbery investigation resulted in someone else being "victimized."

[FN4]  The security guard was never able to positively identify the perpetrator.

Detective Gregory Powell, of the New Orleans Police Department, testified that he reviewed the video surveillance footage from Paradise Casino in connection with his investigation of the June 2, 2008 armed robbery in Orleans Parish.  According to Detective Powell, the defendant was observed wearing a hat with the letters "SWAT" on it, a large black coat, and some blue or purple gloves on his hands.  The surveillance footage also showed the defendant leaving the casino in a white Ford Expedition.

Detective Powell later determined that the defendant owns a white Ford Expedition.  Detective Powell compiled a photographic line-up and presented it to Ms. Gilbert for identification.  Ms. Gilbert positively identified the defendant as the person who committed the robbery.

Based on our review of the record, we agree with the trial court's ruling that the other crimes evidence was substantially relevant to show identity.  The defendant disputed his identity as the perpetrator in the instant offense.  Thus, the State had to establish that element at trial.  Analyzing the offenses, we note that the defendant committed both robberies at approximately the same time, during early morning hours.  In both instances, the defendant was clad in clothing that suggested that he was affiliated with law enforcement.  In both offenses, the defendant held a victim at gunpoint and threatened to shoot if the victim did not cooperate.  The defendant wore gloves in both robberies.  The defendant was identified from a photographic line-up as the perpetrator of both robberies.  We find that the modus operandi in both robberies was so distinctively similar that one may reasonably infer that they were the work of one person.

In finding this evidence relevant and admissible, we have no difficulty concluding that it was more probative than prejudicial and outweighed any dangers set forth in La. C.E. art. 403.  Furthermore, the trial court gave the jury a limiting instruction that the other crimes evidence was received for the limited purpose of

proving an issue for which other crimes evidence may be admitted, but not to prove the bad character of the defendant. The trial court further instructed the jury that the defendant's guilt or innocence relative to the instant offense may not be determined merely because the defendant may have committed another offense. Thus, the trial judge lessened any prejudicial effect and guarded against jury misuse of the evidence by giving cautionary instructions during the trial, and again with his final jury charges. In light of the foregoing, the trial court properly found the other crimes evidence admissible for the limited purpose under La. C. E. art. 404(B).

Moreover, even if we were to find the other crimes evidence was inadmissible, it would not result in the reversal of the defendant's conviction. It is well settled that the erroneous admission of "other crimes" evidence is subject to harmless-error analysis. State v. Morgan, 99-1895, p. 5 (La. 6/29/01), 791 So.2d 100, 104 (per curiam). The test for determining harmless error is whether the verdict actually rendered in the case was surely unattributable to the error. Morgan, 99-1895 at p. 6, 791 So.2d at 104.

After reviewing the record in its entirety, we find the defendant's conviction was surely unattributable to the admission of the other crimes evidence. The defendant was positively identified by the victim in this case, who had ample opportunity to view his face. The victim's trial testimony established he was absolutely positive in his identification of the defendant as the individual who feigned the role of a U.S. Marshal and robbed him at gunpoint. The victim explained that he and the defendant conversed for an extended period of time in the well-lit establishment. The defendant did not conceal his face or otherwise attempt to mask his identity while talking with the victim for almost thirty minutes. Considering the foregoing, we find that the jury's verdict in this case was based on the victim's positive identification of the defendant as the robber shortly after the offense occurred, and again in open court at the trial. Ms. Lee's testimony that the defendant once told her that he was a U.S. Marshal also served to corroborate the victim's account of the events and his identification of the defendant as the robber.

This assignment of error lacks merit.[17]

The United States Fifth Circuit Court of Appeals has held: "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law." Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998). Therefore, to the extent that petitioner is arguing that the state courts misapplied state evidence law, his claim simply is not reviewable in this federal proceeding.

---

[17] State v. Lauga, No. 2010 KA 2209, 2011 WL 3480949, at *5-9 (La. App. 1st Cir. June 10, 2011); State Rec., Vol. 4 of 8.

To the extent that petitioner is asserting a federal claim, he fares no better. Even if petitioner could show that the evidence was in fact improperly admitted, federal habeas relief still would not be warranted. The United States Fifth Circuit Court of Appeals has explained:

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause. The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); accord Little, 162 F.3d at 862 ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.").

Here, the undersigned concurs with the state court's observation that petitioner's conviction cannot be attributed to the "other crimes" evidence. Even aside from that "other crimes" evidence, there was compelling evidence of his guilt of the instant offense, i.e. the testimony of Joseph Brooks, the victim in the instant crime. In light of that testimony, which the jury obviously found credible, it is simply cannot be said that the "other crimes" evidence now challenged by petitioner played a "crucial, highly significant factor" in his conviction.

For all of these reasons, this claim should be denied.

## Denial of Mistrial

Petitioner next claims that the trial court erred in failing to declare a mistrial after the prosecutor questioned petitioner concerning an alleged juvenile delinquency adjudication in St. Bernard Parish. In the first direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> In this assignment of error, the defendant contends the trial court erred in denying his motion for a mistrial after the State questioned him regarding a juvenile

14

adjudication. The defendant argues a mistrial should have been granted under La.C.Cr.P. art. 771 because an admonition could not remedy the prejudice caused by the improper questioning.

The exchange at issue occurred during the State's cross-examination of the defendant:

Q.    Have you ever been in any trouble before?

A.    Arrest-wise or ever convicted?

Q.    In St. Bernard?

[BY DEFENSE COUNSEL]:
Object to that as irrelevant.

BY THE COURT:
Sustained.

EXAMINATION BY [THE STATE]:

Q.    You ever had a conviction in St. Bernard as a juvenile?

A.    No, sir, do not.

Q.    You were never adjudicated a juvenile delinquent?

A.    No, sir, I was not.

Q.    For armed robbery, you were never adjudicated –

[BY DEFENSE COUNSEL]:
I object. As a juvenile, it is irrelevant.

[BY THE DEFENDANT]:
Excuse me, Your Honor. May I?

[BY THE COURT]:
Sustained. You all approach.

During the bench conference, the trial court explained that the defendant's objection was sustained because under La. C.E. art. 609.1(F), evidence of juvenile adjudications of delinquency is not admissible to attack credibility. Counsel for the defendant then moved for a mistrial and argued that the prosecutor's reference to a juvenile adjudication was irrevocably prejudicial and a mistrial was mandatory.

15

The State responded that a mistrial was not warranted since the defendant denied the existence of the juvenile adjudication.

Following the Louisiana Supreme Court's decision in State v. Roberts, 331 So.2d 11, 13 (La. 1976), reversed on other grounds, 431 U.S. 633, 97 S.Ct. 1993, 52 L.Ed.2d 637 (1977), the trial court ruled that a mistrial is mandatory (under La.C.Cr.P. art. 770) only when there is an improper reference to a crime, not a juvenile adjudication. Thus, the court noted that the instant matter is governed by the discretionary mistrial provision of La.C.Cr.P. art. 771.[FN1] The trial court refused to grant a mistrial and reasoned:

> I'm looking specifically at the conversation, questions from yesterday. There is a reference to a conviction as a juvenile. Mr. Lauga on the stand denied that twice. There was never any mention made of what that crime was or may have been.
> So there's nothing in the jury's mind, if anything, about this. Other than that he denied that he was ever adjudicated a delinquent or convicted as a juvenile of any crime. And that's the way it stands with the jury. There's no reference to the type of crime or anything.

> [FN1] On appeal, the defendant does not challenge the trial court's ruling regarding the inapplicability of article 770. Instead, he argues only the trial court abused its discretion in failing to grant a mistrial under article 771.

Under La. C.E. art. 609.1(F), the attempt by the prosecutor in this case to impeach the defendant's credibility by questioning him as to a prior juvenile adjudication was clearly improper. However, as the trial court correctly noted, the improper reference to a juvenile adjudication of delinquency falls within the purview La.C.Cr.P. art. 771, not article 770. See Roberts, 331 So.2d at 13.

Louisiana Code of Criminal Procedure article 771 provides, in pertinent part:

> In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
> (1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770 ...
> ....

16

> In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

Under La.C.Cr.P. art. 771, the granting of a motion for mistrial is discretionary rather than mandatory and is appropriate only when an admonishment cannot cure the error. See State v. Goods, 403 So.2d 1205, 1207 (La. 1981). Moreover, mistrial is a drastic remedy that is authorized only where substantial prejudice will otherwise result to the accused. State v. Anderson, 2000-1737, p. 19 (La.App. 1st Cir. 3/28/01), 784 So.2d 666, 682, writ denied, 2001-1558 (La. 4/19/02), 813 So.2d 421. A trial court's ruling denying a mistrial will not be disturbed absent an abuse of discretion. State v. Givens, 99-3518, p. 12 (La. 1/17/01), 776 So.2d 443, 454.

In the instant case, the trial court sustained the defendant's objection to the State's question regarding the juvenile delinquency adjudication. The trial court denied the defendant's motion for a mistrial, but offered to provide an admonishment to the jury. The defendant declined the admonition, reasoning that it would only serve to draw additional attention to the improper inquiry. Later, during the closing instructions, the trial court instructed the jury on the limited use of other crimes evidence.

Based upon our review of the record in this case, we find no error in the trial court's refusal to grant a mistrial. Initially, we note that the trial court's claim that the nature of the alleged juvenile adjudication was never disclosed is incorrect. The record reflects that the prosecutor specifically inquired whether the defendant had been adjudicated delinquent based upon the offense of armed robbery. Nevertheless, the defendant denied any such adjudication and there was no further questioning on the matter. While it is clear that the inquiry at issue could have given rise to an inference adverse to the defendant, the jury could also infer that the defendant was candid when he denied the existence of said delinquency adjudication since there was no further mention of the issue. Therefore, we find no error or abuse of discretion in the trial court's finding that an admonition, and not a mistrial, was proper. We are not convinced that the defendant was unable to obtain a fair trial because of the inquiry.

This assignment of error is without merit.[18]

Although petitioner now reasserts this claim in the instant proceeding, it is not cognizable in federal court. "Even if the court's refusal to declare a mistrial was a violation of Louisiana law, we, as a federal habeas court, are without authority to correct a simple misapplication of state law;

---

[18] State v. Lauga, No. 2010 KA 2209, 2011 WL 3480949, at *3-5 (La. App. 1st Cir. June 11, 2011); State Rec., Vol. 4 of 8.

we may intervene only to correct errors of constitutional significance." Smith v. Whitley, No. 93-03208, 1994 WL 83777, at *1 (5th Cir. Mar. 3, 1994); see also Holley v. Texas, No. 98-51222, 1999 WL 767117 (5th Cir. Sept. 3, 1999); Otero v. Louisiana, Civ. Action No. 12-1332, 2013 WL 6072716, at *9 (E.D. La. Nov. 18, 2013); Smith v. Travis, Civ. Action No. 08-4627, 2009 WL 1704335, at *9 (E.D. La. June 16, 2009); Williams v. Cain, Civ. Action Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *25 (E.D. La. May 7, 2009), aff'd, 359 Fed. App'x 462 (5th Cir. 2009). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Charles v. Thaler, 629 F.3d 494, 500-01 (5th Cir. 2011) ("Under § 2254, federal habeas courts sit to review state court misapplications of federal law. A federal court lacks authority to rule that a state court incorrectly interpreted its own law."). Simply put, a federal habeas court does "not sit as a 'super' state supreme court" to review alleged errors of state law. Smith v. McCotter, 786 F.2d 697, 700 (5th Cir. 1986); see also Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991). Therefore, this claim should be denied.

Moreover, for the reasons explained below, the prosecutor's action in asking the challenged questions, even if improper, did not rise to the level of a federal constitutional violation.

### Prosecutorial Misconduct/Introduction of False Evidence

Related to the two foregoing claims, petitioner next argues that the prosecutor engaged in misconduct in presenting evidence concerning the Orleans Parish crime and in asking about the alleged St. Bernard Parish juvenile delinquency adjudication because the prosecutor knew that the underlying evidence concerning those matters was false.

It is true that due process may be violated if a prosecutor knowingly uses false testimony at trial or allows untrue testimony to go uncorrected. Giglio v. United States, 405 U.S. 150, 153 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959); Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir. 1996). However, a petitioner is entitled to relief on such a claim only if he shows that (1) the testimony in question was actually false, (2) the prosecutor knew it was false, and (3) the testimony was material. Duncan v. Cockrell, 70 Fed. App'x 741, 744 (5th Cir. 2003). Here, petitioner has presented no evidence whatsoever showing that the testimony concerning the Orleans Parish crime was in fact false, much less that the prosecution was aware of such falsity. On the contrary, his allegations are wholly conclusory and unsupported; as such, they fail to state a viable claim of prosecutorial misconduct. See, e.g., Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990) (holding that bare allegations of prosecutorial misconduct do not establish a due process violation).

With respect to the St. Bernard Parish juvenile delinquency adjudication, no actual evidence was introduced concerning that matter – rather, the prosecutor only asked petitioner whether it occurred. Nevertheless, in some instances, even an improper question by government counsel may constitute prosecutorial misconduct. See United States v. Stands, 105 F.3d 1565, 1577 (8th Cir. 1997); accord United States v. Castillo, 77 F.3d 1480, 1497 (5th Cir. 1996) ("For prosecutorial misconduct in the form of improper comment *or questioning* to represent reversible error, it generally must be so pronounced and persistent that it permeates the entire atmosphere of the trial." (emphasis added; quotation marks omitted)). Here, petitioner argues that the questions at issue were improper because the prosecutor knew that no such adjudication occurred and/or because any evidence concerning such a delinquency adjudication would be inadmissible under state law in any event.

As to that first contention, there is simply no evidence that the prosecutor was aware that his questions were based on a false premise or inaccurate information; on the contrary, he indicated that he had been informed of the St. Bernard Parish charges by parish law enforcement officials and that petitioner's rap sheet confirmed the information.[19]

With respect to the second contention, as already noted above, the state courts did in fact find that evidence of the delinquency adjudication would be inadmissible. Therefore, the prosecutor's questions were improper. Nevertheless, not every instance of prosecutorial misconduct warrants habeas corpus relief. Rather, a federal violation occurs only if the misconduct "render[ed] the trial fundamentally unfair" either because it was "persistent or pronounced" or because "the evidence was so insubstantial that (in probability) but for the [misconduct] no conviction would have occurred." Harris v. Cockrell, 313 F.3d 238, 245 (5th Cir. 2002); see also Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1989); accord Smith v. Mitchell, 567 F.3d 246, 256 (6th Cir. 2009) ("Although we believe that some of the prosecutor's conduct on cross-examination may have been improper, … we cannot conclude that this conduct was flagrant such that it so infected the trial with unfairness as to make the resulting conviction a denial of due process." (quotation marks omitted)).

In the instant case, there is no reason to believe that the prosecutor's questions, although improper, were asked in bad faith in a deliberate attempt to taint the proceedings or prejudice the jury. Moreover, once the trial court sustained the defense objections to the questions, the prosecutor terminated that line of inquiry. Lastly, and most importantly, it simply cannot be reasonably said that the questions played a significant factor in the jury's verdict, especially in that

---

[19] State Rec., Vol. 3 of 8, trial transcript, pp. 417-18.

petitioner denied that any such adjudication occurred, no further evidence concerning the matter was admitted, and there was other overwhelming evidence of his guilt.  Therefore, this claim should be rejected.

Finally, incorporated within this claim is a suggestion that the prosecutor's closing argument was improper because it falsely intimated that petitioner had in his possession a gun which he alleges he had previously sold to a pawn shop.  The state argues that if petitioner intends this as a separate claim of prosecutorial misconduct, the claim is unexhausted.[20]  However, even if it is unexhausted, the claim has no merit and should simply be denied on that basis.[21]  Again, "prosecutorial remarks are a sufficient ground for habeas relief only if they are so prejudicial that they render the trial fundamentally unfair," meaning that the prosecutor's remarks evince either persistent and pronounced misconduct or the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred."  Harris v. Cockrell, 313 F.3d 238, 245 (5th Cir. 2002) (footnote, quotation marks, and ellipsis omitted).  Here, it must be noted that petitioner produced no evidence whatsoever to establish that he had in fact sold the gun to a pawn shop, much less that the prosecution was aware of that purported fact.  In addition, the jury was specifically instructed that they could not consider any statements made in closing arguments as evidence in the case,[22] and there is no reason to believe that they would have disobeyed that instruction.[23]  Moreover, in any event, it cannot reasonably be suggested that the comments played a role in the jury's verdict.  Therefore, this claim fails on the merits.

---

[20] Rec. Doc. 12, p. 13.

[21] A federal court has the authority to deny an unexhausted claim on the merits.  28 U.S.C. § 2254(b)(2).

[22] State Rec., Vol. 3 of 8, trial transcript, p. 470.

[23] "A jury is presumed to follow its instructions."  Weeks v. Angelone, 528 U.S. 225, 234 (2000).

## Ineffective Assistance of Counsel

Petitioner also claims that he received ineffective assistance of counsel.  In the state post-conviction proceedings, the state district court denied that claim, holding:

> Lauga's … claim is that of ineffective assistance of his appointed trial counsel.  He notes three actions as evidence for this claim:  1) failing to engage in pretrial investigation, 2) allowing the State to improperly introduce hearsay evidence of his involvement in an alleged armed robbery in St. Bernard Parish, and 3) not exercising defense's three remaining peremptory challenges to exclude certain jurors due to prejudices apparent during voir dire.  Petitioner also argues that the court should look at counsel's actions or inactions cumulatively to evaluate his performance.
>
> In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674, the Supreme Court set forth the standard for analyzing ineffective assistance of counsel claims as follows:
>
>> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
>
> In his memorandum, Lauga argues that "Clearly, a simple investigation by counsel would have produced alibi witnesses … records from the Orleans Parish District Attorney office clearing him of the robbery, and the absence of any convictions in St. Bernard Parish."  Undoubtably, an attorney has an ethical duty to investigate.  However, "(a) defendant who asserts a claim of ineffective counsel based on a failure to investigate must allege with specificity what the investigation would have revealed and how it would have altered the outcome of a trial.  General statements and conclusory charges will not suffice."  State v. Casteneda, 94-1118 (La. App. 1st Cir. 6/23/95), 658 So.2d 297, 306.  Lauga's burden in this proceeding is to come forward with evidence of his innocence, including alibi witnesses as well as sufficient records from Orleans and St. Bernard Parishes.

Petitioner suggests that his attorney should have called some unidentified person to testify to his whereabouts on the night in question. Lauga testified that at the time of the robbery, he was in an apartment a short distance from the robbery scene with four[FN4] other people. On cross-examination he admitted that none of those four could establish where he was at the time the crime was committed. He indicated that his "witnesses" were questioned by the police and no exculpatory evidence was forthcoming. All were either asleep or in another room behind closed doors. With regard to the absence of his "alibi" witnesses, at trial Lauga was asked "You don't know why they are not coming to testify?" To which he replied "I do not feel any reason why they would make a difference."

> [FN4]   Lauga testified that there were five people total in the apartment, he and four others. During cross-examination, the State referred to five other people in the apartment. Lauga did not attempt to correct this inconsistency.

In the context of this Application, Petitioner does not offer affidavits of those purported witnesses, nor does he even provide their identity. If he could not establish an alibi at trial, it is difficult to contemplate how he can do so now. Since Lauga named the people who were with him at the time but testified that none of them could vouch for his whereabouts, such testimony would at this point in time would contradict his own testimony. Counsel's failure to elicit such testimony does not render his performance deficient.

In the second part of his ineffectiveness claim, Lauga argues that his attorney enabled the State to improperly introduce hearsay evidence of an alleged armed robbery in St. Bernard Parish. Petitioner argues that his attorney should have investigated those charges and obtained evidence of their dismissal prior to trial. Lauga therefore admits that there were in fact charges filed against him.

Defendant's uncle, Ray Lauga testified at trial on his behalf. He stated that he had formerly served as chief of detectives on the St. Bernard Parish Sheriff's Department and had investigated defendant's Orleans Parish charges. Those facts suggest that he could also have easily done so for the St. Bernard matter and testified to the disposition of those charges. All of this assumes defendant alerted his attorney to that charge and that it had, in fact, been dismissed, neither of which have been established here.

The First Circuit considered the issue of the St. Bernard charges in Lauga's first appeal. The First Circuit held that due to the very limited questions by the State which Petitioner denied, Lauga had not been prejudiced and mistrial was not warranted. This court would concur with that decision. Furthermore, under C.Cr.P. Art. 930.4 A, [FN5] defendant is precluded from raising it again in this proceeding.

> [FN5]   A.   Unless required in the interest of justice, any claim for relief which was fully litigated in an appeal from the proceedings

leading to the judgment of conviction and sentence shall not be considered.

In Lauga's third ineffectiveness claim he asserts that counsel should have excused certain jurors based on the prejudices they expressed during voir dire. He argues that jurors O'Malley, Trahan, Robinson, Ledet and Philippe had "relationships with law enforcement." A relative of Ms. O'Malley was a sitting judge in the 22nd Judicial District. Contrary to Petitioner's assertion of prejudice, this position mandates freedom from prejudice.

Ms. Trahan stated that her father was an attorney who practiced both civil and criminal law. Significantly, she was not asked whether he represented the State or defense in his criminal practice. Ms. [sic] Ledet worked as a book binder for the Clerk of Court, hardly a position which would be considered "in law enforcement" for a prejudice challenge. Juror Robinson was related to a former Sheriff and juror Philippe was good friends with "a prosecutor".[FN6] All of these individuals stated that they could give Lauga a fair trial based on the law and the evidence alone. Further, there was nothing brought out in questioning that suggested any prejudice either towards or against Lauga.

[FN6] Lauga states that Phillipe's [sic] friend was "the" prosecutor when in fact that individual served in another jurisdiction.

A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." See Michel v. Louisiana, supra, 350 U.S., at 101, 76 S.Ct., at 164. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defendant a particular client in the same way. See Goodpaster, The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases, 58 N.Y.U.L.Rev. 299, 343 (1983). Strickland supra.

Finally, Petitioner argues that a cumulative examination of all of counsel's alleged failures supports the relief he seeks in this Application. This court has conducted such a review and finds that counsel objected appropriately, requested a stay of the proceedings, argued for mandatory mistrial and moved several times in

Lauga's defense.  Petitioner has failed to meet his burden of proof on his <u>Strickland</u> claims.[24]

His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[25] and by the Louisiana Supreme Court[26] without additional reasons assigned.

Because an ineffective assistance of counsel claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claim unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); <u>Moore v. Cockrell</u>, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable.  This is different from asking whether defense counsel's performance fell below <u>Strickland</u>'s standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a <u>Strickland</u> claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The

---

[24] State Rec., Vol. 7 of 8, Order dated July 16, 2014, pp. 3-7.  The undersigned notes that the trial judge's opinion contains a factual error concerning juror O'Malley.  That juror's connection to law enforcement was that his brother was a New Orleans police officer during the 1970s; it was juror Olmsted who was related to a sitting judge.  State Rec., Vol. 1 of 8, trial transcript, p. 146.  That factual error, however, is of no moment.  O'Malley's connection to law enforcement is too attenuated to suggest bias, and, as noted below, he stated under oath that it would not affect his ability to be impartial.

[25] <u>State v. Lauga</u>, No. 2014 KW 1203 (La. App. 1st Cir. Oct. 23, 2014); State Rec., Vol. 7 of 8.

[26] <u>State *ex rel.* Lauga v. State</u>, 178 So.3d 161 (La. 2015); State Rec., Vol. 8 of 8.

> more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." <u>Ibid</u>. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting <u>Strickland</u>'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id</u>. at 105 (citations omitted; emphasis added). Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." <u>Woods v. Etherton</u>, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claim.

Here, the state court correctly identified the clearly established federal law which governs ineffective assistance of counsel claims: Strickland v. Washington, 466 U.S. 668 (1984). Strickland established a two-prong test for evaluating such claims. Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Id. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Id</u>. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." <u>Crockett</u>, 796 F.2d at 793.

As the state court noted, one of petitioner's primary allegations concerns purported defects in counsel's investigation. For example, petitioner argues that counsel was ineffective for failing to investigate the state's contention that petitioner was involved in other armed robberies in Orleans and St. Bernard Parishes. He suggests that if such investigation had been performed, counsel would have been able to secure documents showing that the charges resulting from those crimes had been either dropped or dismissed. Similarly, he argues that counsel was ineffective for failing to investigate and obtain documentation showing that the gun involved in the instant crime had been sold by petitioner to a pawn shop prior to the commission of the offense.

However, as the state court noted, petitioner bears the burden of proof with respect to claims of inadequate investigation, and he fell far short. Petitioner's allegations were entirely speculative and unsubstantiated. Although he *alleged* that defense counsel failed to investigate these aspects of the case, petitioner provided no evidence, such as affidavits from defense counsel or other individuals, to prove that allegation. He cannot meet burden his burden of proof merely by engaging in speculation or making bare allegations as to what actions counsel may have taken or failed to take. Further, this Court cannot simply assume that petitioner's allegations are true, in

that other explanations are obviously possible.  For example, counsel may well have explored the various avenues of investigation, but found no additional information that was, in his professional opinion, beneficial to the defense.  Without any proof whatsoever of what counsel actually did and did not do, and without evidence concerning the reasons for his choices, there is no evidentiary foundation for concluding that he performed deficiently.

Further, even if petitioner had shown that the investigation was deficient, he would then additionally have to prove that prejudice resulted.  To make that showing, he must point to evidence establishing that more thorough investigation would have actually benefited the defense, for example by showing that exculpatory evidence existed and would have been revealed through additional efforts.  See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).  Here, he utterly failed in that regard; rather, his assertions were entirely speculative.  Again, a petitioner cannot rely on such bare speculation to meet his burden of proof.  See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

With respect to the Orleans Parish armed robbery, there is no reason to believe that *additional* beneficial evidence would have been discovered through further investigation.  On the contrary, it was *already* established at trial that those charges were not pursued because the victim was unwilling to testify and the other witness, the security guard, could not identify petitioner.  Petitioner has not explained what additional information was necessary or would have been helpful to the jury.

With respect to the St. Bernard armed robbery, petitioner did in fact submit evidence in support of his claim. However, that evidence was found wanting, with the state district judge explaining:

> Petitioner seeks to support this claim by attaching a copy of a Minute Entry of October 19, 2000 from St. Bernard Parish. This court is unable to verify by means of this document whether or not it refers to the challenged charges. Other than a docket number, defendant's name and a charge of armed robbery, this document contains no information to link it to the charges at issue. Also, because the court's action referenced in the Minute Entry was taken seven years after the alleged conviction/adjudication, this court is unconvinced that it references the same charges.[27]

Once again, petitioner has not established that any additional, more compelling evidence could have been obtained by counsel through further investigation.

Moreover, in any event, there is no reason to believe that any such evidence, if it even existed, would have been helpful to the defense. To the contrary, at trial, petitioner *denied* the existence of the St. Bernard arrest, defense counsel objected to that issue being explored, the questioning regarding that incident immediately terminated, and no evidence concerning that incident was ever presented at trial. Accordingly, as the Louisiana First Circuit Court of Appeal observed above in its discussion of petitioner's claim concerning the denial of a mistrial, the jury therefore could well have inferred that there was no such proceeding in St. Bernard Parish. If so, there would have been no tangible benefit to defense counsel presenting evidence petitioner had been arrested but the charges were dismissed. If anything, an arrest (even without a resulting conviction) would seemingly cause a juror greater pause than a belief that there had been no such arrest at all.

---

[27] State Rec., Vol. 7 of 8, Order dated July 16, 2014, p. 7.

With respect to the gun which petitioner alleges was sold to a pawn shop prior to the commission of the offense, he again failed to provide evidence in support of his claim. For example, as a threshold matter, he provided no evidence whatsoever that the sale actually occurred. Therefore, there is no basis to conclude that such evidence even existed, much less that petitioner was prejudiced by counsel's failure to discover and introduce such evidence.[28]

In any event, the issue of the gun simply did not have the importance petitioner suggests. At trial, evidence was presented that a gun was used in the Orleans Parish robbery and that the gun was subsequently recovered from petitioner's car during the ensuing investigation. However, when the Orleans Parish charges were dropped, the gun was returned to petitioner. In the instant trial, the state then introduced a photograph of a gun *similar to* one seized in the Orleans Parish case,[29] and Joseph Brooks, the victim of the instant crime, testified that the gun in that photograph was the one used to rob him. The state opined that this was further evidence of petitioner's guilt, because it indicated that a gun already known to belong to petitioner was *similar to* the gun used by him to commit *this* offense. Again, petitioner counters that it simply is not possible, in that he had sold "that gun" to a pawn shop before the instant offense was even committed.

---

[28] The undersigned is aware that petitioner wants this Court to assist him to secure such evidence now. However, as explained later in this opinion, a federal habeas court is allowed to consider *only* the evidence that was presented to the state courts. Cullen v. Pinholster, 563 U.S. 170, 181-83 (2011). Therefore, even if such evidence exists and could be produced, it would not aid petitioner to present it to this court in the first instance.

[29] Contrary to what petitioner implies, it was not established that the gun in the photograph was the *same* gun recovered in the Orleans investigation – only that it was *similar* to that gun. Detective Gregory Powell testified:

> Q.   Officer, to clarify, the gun you identified in the picture, is that the actual gun you seized or similar gun?
> A.   That's what I say. It's a strong replica of the gun.
> Q.   Probably the same make and model, but maybe not the actual.
> A.   I did not check the serial numbers on the picture.

State Rec., Vol. 2 of 8, trial transcript, p. 209.

However, *even if* petitioner had in fact sold "that gun" and *even if* counsel had produced evidence of that fact at trial, there is no reasonable probability that the result of this proceeding would have been different. The instant conviction rests on the fact that Brooks credibly *identified petitioner*, a man with whom Brooks had engaged in a prolonged conversation prior to the robbery – *not* because he *identified the gun* in the photograph. Moreover, the jurors could simply have concluded that petitioner had more than one gun of the same make and model. Nevertheless, even if the jurors concluded that Brooks was *entirely mistaken* in identifying the gun, that would not diminish the credibility of Brooks' compelling *identification of petitioner himself.*

For all of these reasons, petitioner has not met his burden of proof to show either than counsel's investigation was deficient or that there was any resulting prejudice.

Similar defects obviously exist with respect to petitioner's allegation that counsel was ineffective for failing to interview and subpoena witnesses who could provide him with an alibi or otherwise cast doubt on his guilt. Once again, petitioner has presented no actual evidence showing that defense counsel in fact failed to interview the proposed witnesses – without any evidence in support of this claim, it is equally possible that counsel interviewed, or unsuccessfully attempted to interview, the various individuals but found them to be incredible or opted not to call them for other strategic reasons.

Nonetheless, even if petitioner were able to establish that the witnesses were not interviewed, that alone would not suffice. He must further establish that the proposed witnesses would in fact have supported his version of events if they had been interviewed, and he has utterly failed to make that showing. Moreover, the United States Fifth Circuit Court of Appeals has explained:

Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, *we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense.* This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted; emphasis added); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

In this case, petitioner presented no evidence, such as affidavits from the uncalled witnesses, demonstrating that they would have testified in a manner beneficial to the defense. Therefore, again, he obviously failed to meet his burden of proof with respect to this claim. See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with

affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Petitioner's claim that his counsel was ineffective for failing to use additional preemptory challenges is likewise meritless.  It has been noted that jury selection is "more an art than a science."  Romero v. Lynaugh, 884 F.2d 871, 878 (5th Cir.1989).  Taking that into account, the United States Fifth Circuit Court of Appeals has observed, "The selection of a jury is inevitably a call upon experience and intuition. The trial lawyer must draw upon his own insights and empathetic abilities.  Written records give us only shadows for measuring the quality of such efforts."  Id.  The Fifth Circuit has further held:

> [An] attorney's actions during voir dire are considered to be a matter of trial strategy.  A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be so ill chosen that it permeates the entire trial with obvious unfairness.

Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir. 1995) (quotation marks omitted).

In light of such considerations, federal courts are generally loath to second-guess trial counsel's decision on to whether to exercise a peremptory challenge to remove a juror.  For example, the Fifth Circuit has noted that, "on multiple occasions," it has declined to find counsel ineffective even when they have "decided for strategic reasons not to strike potential jurors who admitted they were 'probably' biased against the defendant."  Morales v. Thaler, 714 F.3d 295, 305 (5th Cir. 2013).

In petitioner's case, there is even less reason to second-guess counsel's decision not to use preemptory strikes to remove O'Malley, Trahan, Robinson, Ledet, and Philippe from the panel. Those jurors in no way indicated that they were actually biased against petitioner. Moreover, to the extent that petitioner is arguing that they should have nevertheless been removed because they are presumptively biased based on their various connections to the legal system or law enforcement officials, that contention is easily dismissed. Such connections do not alone constitute bias or render an individual unfit for service; on the contrary, even a law enforcement official himself may serve if he can be impartial. See, e.g., United States v. McCord, 695 F.2d 823, 828 (5th Cir. 1983); Newman v. Cain, Civ. Action No. 09-4445, 2010 WL 1817771, at *15 (E.D. La. Apr. 12, 2010), adopted, 2010 WL 1838064 (E.D. La. May 4, 2010); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *15 (E.D. La. Oct. 29, 2009). Here, except for Ledet, who was not asked, all of the jurors in question indicated that their connections to law enforcement or the legal system would not affect their ability to be impartial.[30] Without more, there is no basis for concluding that counsel was ineffective for failing to strike them.

Petitioner also suggests that defense counsel should have used peremptory challenges to strike jurors who, when posed with a vague hypothetical question, stated that they would rather see an innocent man convicted than see a guilty man go free. Petitioner opines that such an answer

---

[30] State Rec., Vol. 1 of 8, trial transcript, p. 146 (O'Malley); State Rec., Vol. 2 of 8, trial transcript, pp. 147-49 (Robinson, Trahan, and Philippe). It is unsurprising that Ledet was not asked. His only connection was that he worked for the St. Tammany Clerk of Court as a book binder." State Rec., Vol. 1 of 8, trial transcript, p. 110. That connection to the criminal justice system is so remote that no one could reasonably suggest that it might bias the juror.

The undersigned notes that petitioner does not specifically mention juror Olmstead, the juror related to a sitting judge, with respect to this claim. However, like the state district court, petitioner incorrectly indicates that it was O'Malley, not Olmsted, who was related to a judge. Nevertheless, out of an abundance of caution, the undersigned notes that Olmsted also specifically stated that the fact that she was related to a judge would not affect her ability to be fair and impartial. State Rec., Vol. 2 of 8, trial transcript, p. 146.

indicates that the jurors would not follow the reasonable doubt instruction and render a verdict in accordance with the law. That is not true. While such a broad philosophical question may serve some purpose, it simply does not show which jurors who would consciously and purposely disobey the jury instructions. Quite the opposite: with respect to that issue, it makes no difference how prospective jurors answer the question, because *both* jurors who would prefer to convict an innocent man *and* jurors who would prefer to acquit a guilty man would similarly violate their oaths if they based their votes on their personal preferences rather than the evidence presented at trial. Therefore, without more, a juror who espouses either answer is not automatically suspect, and counsel is not ineffective for failing to strike a juror on the basis of such an answer alone.

Petitioner next argues that even if his separate contentions regarding counsel's ineffectiveness do not warrant relief when considered individually, relief is warranted if they are considered cumulatively. He is incorrect. Where, as here, the individual contentions are meritless, that result cannot be changed simply by asserting them collectively. Pondexter v. Quarterman, 537 F.3d 511, 525 (5th Cir. 2008); United States v. Hall, 455 F.3d 508, 520 (5th Cir. 2006); Miller v. Johnson, 200 F.3d 274, 286 n.6 (5th Cir. 2000); Sholes v. Cain, Civ. Action No. 06-1831, 2008 WL 2346151, at *17 (E.D. La. June 6, 2008), aff'd, 370 Fed. App'x 531 (5th Cir. 2010); Simms v. Cain, Civ. Action No. 07-966, 2008 WL 624073, at *26 (E.D. La. Mar. 8, 2008); Spicer v. Cain, Civ. Action No. 07-3770, 2007 WL 4532221, at *10 (E.D. La. Dec. 19, 2007); Franklin v. Thompson, Civ. Action No. 07-543, 2007 WL 3046642, at *13 (E.D. La. Oct. 17, 2007). As the United States Fifth Circuit Court of Appeals noted with respect to analogous claims of cumulative error: "Twenty times zero equals zero." Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987).

Based on the foregoing, it is clear that the state court ruling that petitioner failed to meet his burden of proof with respect to his ineffective assistance of counsel claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law. Accordingly, under the doubly deferential standards of review mandated by the AEDPA, petitioner's claim should be denied.

That said, the Court is aware that petitioner blames his lack of evidence on the fact that he was not afforded a post-conviction evidentiary hearing in the state courts. However, that complaint is not cognizable in a federal habeas proceeding. Louisiana law expressly provides for summary disposition of post-conviction applications: "If the court determines that the factual and legal issues can be resolved based upon the application and answer, and supporting documents, including relevant transcripts, depositions, and other reliable documents submitted by either party or available to the court, the court may grant or deny relief without further proceedings." La. Code Crim. P. art. 929(A). Further, a state court's decision on such matters is not reviewable in federal court. As one court recently explained:

> To the extent that petitioner complains that the State Court denied his post-conviction application without holding an evidentiary hearing pursuant to Louisiana Code of Criminal Procedure article 929(A), that claim is not cognizable in this federal habeas corpus proceeding. In this case, the trial court determined that it could properly resolve petitioner's post-conviction application pursuant to article 929(A). Federal courts "do not sit as a super state supreme court...." Taylor v. Cain, 2010 WL 6620876, *12 (W.D. La. 2010) citing Skillern v. Estelle, 720 F.2d 839, 852 (5th Cir. 1983). Thus, it is not the province of this court to determine if the state courts properly applied state law. Id. citing Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475, 480 (1991) and Narvaiz v. Johnson, 134 F.3d 688 (5th Cir. 1998). Moreover, the Fifth Circuit has repeatedly held that defects in a state habeas proceeding are not cognizable under 28 U.S.C. § 2254. Id. (and cases cited therein including Moore v. Dretke, 369 F.3d 844, 846 (5th Cir. 2004), Rudd v. Johnson, 256 F.3d 317, 319-20 (5th Cir.), cert. denied, 534 U.S. 1001, 122 S.Ct. 477, 151 L.Ed.2d 391 (2001), Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir. 1999); Kidd v. Keith, 2014 WL 463056, *5 (W.D. La. 2014) (citations omitted).

Pitts v. Tanner, Civ. Action No. 6:14-cv-3145, 2015 WL 10045174, at *23 (W.D. La. Dec. 14, 2015), adopted, 2016 WL 554884 (W.D. La. Feb. 10, 2016); accord Smith v. Terrell, Civ. Action No. 09-3791, 2009 WL 4799190, at *3 (E.D. La. Dec. 7, 2009).

Out of an abundance of caution, the Court further notes that petitioner also is not entitled to a federal evidentiary hearing to secure new evidence at this stage of review. On the contrary, the United States Supreme Court has expressly stated:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time *i.e.,* the record before the state court.
>
> This understanding of the text is compelled by "the broader context of the statute as a whole," which demonstrates Congress' intent to channel prisoners' claims first to the state courts. The federal habeas scheme leaves primary responsibility with the state courts. Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief. It would be contrary to that purpose to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo*.
>
> Limiting § 2254(d)(1) review to the state-court record is consistent with our precedents interpreting that statutory provision. Our cases emphasize that review under § 2254(d)(1) focuses on what a state court knew and did. State-court decisions are measured against this Court's precedents as of the time the state court renders its decision. To determine whether a particular decision is "contrary to" then-established law, a federal court must consider whether the decision applies a rule that contradicts such law and how the decision confronts the set of facts that were before the state court. If the state-court decision identifies the correct governing legal principle in existence at the time, a federal court must assess whether the decision unreasonably applies that principle to the facts of the prisoner's case. It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.

38

<u>Cullen v. Pinholster</u>, 563 U.S. 170, 181-83 (2011) (citations, quotation marks, brackets, and ellipsis omitted).

**<u>Excessive Sentence</u>**

Lastly, petitioner claims that his sentence is excessive.  In the second direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> In two related assignments of error, the defendant contends that the trial court erred in denying his motion to reconsider his sentence, which he argues is constitutionally excessive.
>
> As an initial matter, we note that the defendant filed a motion to reconsider sentence following the original sentencing hearing, but did not make a new motion after resentencing.  The motion to reconsider alleged that the sentence was constitutionally excessive, that the interests of justice require a less severe sentence, and all reasons orally argued before the court at the time of sentencing.  At the original sentencing hearing, the defendant argued that the sentence was excessive because he was a first offender.  The defendant also filed a pro se motion to reconsider in which he argued that he was innocent, and that the trial court failed to give the defense the presentence investigation report (PSI) for consideration in setting a fair sentence.  Under La.Code Crim. P. art. 881.1(E), a defendant must make or file a motion to reconsider sentence setting forth the "specific ground" upon which the motion is based in order to raise an objection to the sentence on appeal.  If the defendant does not allege any specific ground for his claim of excessiveness or present any argument or evidence not previously considered by the court at original sentencing, he is relegated on appeal to a review of his bare claim of excessiveness.  <u>State v. Mims</u>, 619 So.2d 1059 (La. 1993) (per curiam). In the instant matter, though the defendant did not make a new motion for reconsideration of sentence, because the trial court imposed an identical sentence, we will consider all of the arguments included in his motions to reconsider sentence filed after the original sentencing.
>
> Article 1, Section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment.  Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review.  <u>State v. Sepulvado</u>, 367 So.2d 762, 767 (La. 1979). Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering.  A sentence is considered grossly disproportionate if, when the crime and punishment are considered in the light of the harm to society, it is so disproportionate as to shock one's sense of justice.  A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of

discretion.  State v. Hurst, 99-2868 (La.App. 1st Cir. 10/3/00), 797 So.2d 75, 83, writ denied, 2000-3053 (La. 10/5/01), 798 So.2d 962.

Louisiana Code of Criminal Procedure article 894.1 sets forth items which must be considered by the trial court before imposing sentence.  While the trial court need not recite the entire checklist of Article 894.1, the record must reflect that it adequately considered the guidelines.  State v. Williams, 521 So .2d 629, 633 (La.App. 1st Cir. 1988).  In light of the criteria expressed by Article 894.1, a review for individual excessiveness must consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision.  State v. Watkins, 532 So.2d 1182, 1186 (La.App. 1st Cir. 1988).  However, the goal of Article 894.1 is the articulation of the factual basis for a sentence, not rigid or mechanical compliance with its provisions.  See State v. Lanclos, 419 So.2d 475, 478 (La. 1982).  Even when a trial court assigns no reasons, the sentence will be set aside on appeal and remanded for resentencing only if the record is either inadequate or clearly indicates that the sentence is excessive.  See La.Code Crim. P. art. 881.4(D); State v. Harris, 601 So.2d 775, 779 (La.App. 1st Cir. 1992).

For the crime of armed robbery, the defendant was exposed to a term of imprisonment at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.  La. R.S. 14:64(B).  Thus, the trial court's sentence of sixty-five years imprisonment at hard labor falls within the statutory guidelines.

At the sentencing hearing following remand, the trial court gave the same sentence given at the original sentencing hearing, and adopted all of the reasons articulated at that time.  At the first sentencing hearing, the trial court said it was particularly disturbed by the fact that this case, as opposed to many other cases of armed robbery, did not involve drug activity, which made the defendant's case more sinister.  The trial court also considered that the defendant represented himself to be in law enforcement and then used that representation to prey upon the victim.  Considering Article 894.1, the trial court said that there was an undue risk of the defendant committing further violent crimes, that his conduct during the crime manifested deliberate cruelty to the victim when he said he was going to kill him, that he used a position of alleged status to try to get his victim to go along with him, and that he used threats of or actual violence in the commission of the offense.  The defendant also used a firearm.  Over the defendant's objection, the court also considered the Article 404(B) evidence that came in at trial as evidence that the defendant had been involved in similar offenses, which showed a criminal history and something that would have been considered as part of a multiple-offender adjudication.  The court did not state whether or not it considered the PSI, but it did state that there were no Article 894.1 mitigating factors.  Finally, the trial court said there was no doubt that the defendant was a serious and grave risk to the community and that he had proven himself unfit to be part of any community.

We find that the trial court's reasons for the sentence adequately demonstrate compliance with Article 894.1.  The trial court articulated several reasons why it felt the defendant was a particular threat to the community, and why

the circumstances of the crime dictated that the defendant be kept in a custodial environment. In addition, although the defendant is a first-felony offender, the trial court properly considered the prior armed robbery in Orleans Parish, for which the defendant was never prosecuted. Though the defendant argued pro se that the trial court did not give the defense the PSI in considering a fair sentence, a review of the record shows that the defendant never requested to view the PSI. Further, a trial court considers the case's aggravating and mitigating factors before imposing a sentence, but ultimately it can sentence a defendant on whichever grounds it believes most relevant. In other words, the trial court has much discretion in sentencing. See State v. Milstead, 95-1983 (La.App. 1st Cir. 9/27/96), 681 So.2d 1274, 1277, writ denied, 96-2601 (La. 3/27/97), 692 So.2d 392.

Based on the facts adduced at trial, that the sentence is well within the statutory limits, and given the trial court's wide discretion in the imposition of sentences, we cannot say that the trial court manifestly abused its discretion in sentencing the defendant to sixty-five years at hard labor. Accordingly, these assignments of error are without merit.[31]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[32]

To the extent that petitioner is again claiming that his sentence is excessive or otherwise inappropriate under Louisiana law, that claim is not cognizable in this federal proceeding. As previously noted, federal habeas corpus relief is available only to correct violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law. Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998). Accordingly, a federal habeas court will not review the legality of a petitioner's sentence under state law. See, e.g., Nyberg v. Cain, Civ. Action No. 15-98, 2015 WL 1540423, at *12 (E.D. La. Apr. 7, 2015); Phillips v. Cain, Civ. Action No. 13-5868, 2014 WL 4425751, at *10 (E.D. La. Sept. 8, 2014), adopted, 2014 WL 5080246

---

[31] State v. Lauga, No. 2012 KA 0842, 2012 WL 6681850, at *3-5 (La. App. 1st Cir. Dec. 21, 2012); State Rec., Vol. 5 of 8.
[32] State v. Lauga, 120 So.3d 258 (La. 2013); State Rec., Vol. 5 of 8.

(E.D. La. Sept. 26, 2014); Brunet v. Goodwin, Civ. Action No. 12-1974, 2013 WL 623505, at *12 (E.D. La. Jan. 22, 2013), adopted, 2013 WL 619278 (E.D. La. Feb. 19, 2013).

On the other hand, to the extent that petitioner is claiming that his sentence is excessive under *federal* law, that claim obviously is cognizable; however, it is also meritless.   Even considering petitioner's argument that his sentence is harsh, the mere fact that a sentence is harsh does not mean that it is unconstitutionally excessive.   For the following reasons, petitioner's sentence does not cross that impermissible line.

In Solem v. Helm, 463 U.S. 277, 284 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed."   "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts." United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997) (citing Rummel v. Estelle, 445 U.S. 263, 274-76 (1980)).   "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." Gonzales, 121 F.3d at 942 (quotation marks omitted). "[T]herefore, it is firmly established that successful challenges to the proportionality of punishments should be exceedingly rare." Id.  (quotation marks omitted).

Interpreting Solem in light of intervening precedent, the United States Fifth Circuit Court of Appeals has set forth the framework to be used when analyzing a claim that a sentence is excessive:

> [W]e will initially make a threshold comparison of the gravity of [petitioner's] offenses against the severity of his sentence.   Only if we infer that the sentence is grossly disproportionate to the offense will we then ... compare the sentence

received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992).

The Fifth Circuit has noted that Rummel v. Estelle, 445 U.S. 263 (1980), "establishes a benchmark for disproportionate punishment under the Eighth Amendment." Gonzales, 121 F.3d at 943. In Rummel, the Supreme Court upheld a petitioner's sentence to life imprisonment for obtaining $120.75 under false pretenses. The sentence was imposed under a Texas recidivist statute and took into account petitioner's prior convictions for fraudulent use of a credit card and passing a forged check. The Fifth Circuit observed:

> We acknowledge that the distinction between constitutional sentences and grossly disproportionate punishments is an inherently subjective judgment, defying bright lines and neutral principles of law. Nevertheless, we can say with certainty that the life sentence approved in Rummel falls on the constitutional side of the line, thereby providing a litmus test for claims of disproportionate punishment in violation of the Eighth Amendment.

Gonzales, 121 F.3d at 943 (footnote omitted).

Here, petitioner's sentence fell within the range provided by law. Moreover, armed robbery is a serious and inherently dangerous crime. In light of the Rummel finding that a life sentence was not excessive when imposed for a *nonviolent* offense where the habitual offender had two prior *nonviolent* offenses, all of which were relatively minor offenses, this Court cannot say that petitioner's sentence for his much graver offense is grossly disproportionate under federal law. Because the sentence is not grossly disproportionate, this Court's "inquiry is finished." Gonzales, 121 F.3d at 942.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by William David Lauga be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[33]

New Orleans, Louisiana, this fourth day of October, 2016.

**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

---

[33] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.